## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

CARLYLE AVIATION MANAGEMENT
LIMITED, ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED, VERMILLION
AVIATION (TWO) LIMITED, ACCIPITER
HOLDINGS DAC, MAVERICK AVIATION
HOLDINGS LTD., MANCHESTER
AVIATION FINANCE S.a.r.l., WELLS
FARGO TRUST COMPANY, N.A., not in its
individual capacity but solely in its capacity as
OWNER TRUSTEE, UMB BANK, N.A., not in
its individual capacity but solely in its capacity
as OWNER TRUSTEE,

    Plaintiffs,

  v.

FRONTIER AIRLINES, INC.

    Defendant.

Case No. 1:23-cv-04774 (PAE)

[Rel. 1:22-cv-02943 (PAE)]

---

## ANSWER AND COUNTERCLAIMS OF FRONTIER AIRLINES, INC.

Frontier Airlines, Inc. ("Frontier"), by its undersigned counsel, Binder & Schwartz LLP, hereby answers and responds as follows to the Complaint dated May 26, 2023 (the "Complaint"), filed by Carlyle Aviation Management Limited ("CAML"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.a r.l. ("Manchester"), Wells Fargo Trust Company, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("Wells Fargo"), and UMB Bank, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("UMB") (collectively, "Plaintiffs").  Frontier denies each and every allegation in the Complaint except as expressly admitted below.

## ANSWER

1.      Frontier admits that it is a commercial airline that leases a total of fourteen passenger aircraft from certain of the Plaintiffs and/or their predecessors that it uses in its business.  Frontier denies the remaining allegations in Paragraph 1 of the Complaint and respectfully submits that issues concerning whether Plaintiffs are properly the beneficial owners and lessors of the aircraft are the subject of the 2022 Litigation (as defined in Paragraph 2 of the Complaint).

2.      Frontier admits the allegations in Paragraph 2 of the Complaint.

3.      Frontier denies the allegations in Paragraph 3, except admits that the parties entered into a Non-Waiver and Preservation of Rights Agreement, which allows Frontier to interface with Plaintiffs as though they are the proper counterparty under the Leases and other Operative Documents, which Frontier denies.  Frontier otherwise refers to the Non-Waiver and Preservation of Rights Agreement for its content.

4.      Paragraph 4 of the Complaint purports to describe the parties' Leases.  Frontier respectfully refers to the Leases for their contents, and otherwise denies the allegations in Paragraph 4.

5.      Paragraph 5 of the Complaint purports to contain quoted text from the Leases, and then characterizes the terms of the Leases.  Frontier respectfully refers to the Leases for their contents, and otherwise denies the allegations in Paragraph 5.

6.      Paragraph 6 of the Complaint purports to contain quoted text from the Leases.  Frontier respectfully refers to the Leases for their contents and otherwise denies the allegations in Paragraph 6.

7.      Paragraph 7 of the Complaint is argumentative and purports to state legal conclusions as to which no response is required.  To the extent any response is required, Frontier denies the allegations in Paragraph 7.

8.      Paragraph 8 of the Complaint is argumentative and purports to state legal conclusions as to which no response is required.  To the extent any response is required, Frontier denies the allegations in Paragraph 8.

9.      Frontier denies the allegations in Paragraph 9 of the Complaint, except admits that Plaintiffs have asked Frontier to acknowledge their attempts to sell and/or refinance certain of the aircraft.

10.      Frontier denies the allegations in Paragraph 10 of the Complaint, except admits that Plaintiffs have requested in or around November 2022 that Frontier consent to a security assignment for each of the aircraft and a lease assignment for certain of the aircraft.

11.      Frontier denies the allegations in Paragraph 11 of the Complaint.

12.      Frontier admits the allegations in Paragraph 12 of the Complaint.

13.      Frontier admits the allegations in Paragraph 13 of the Complaint.

14.      Frontier admits that Accipiter is a company incorporated under the laws of Ireland and that it is the Owner Participant for thirteen Leases with Frontier and is Guarantor for certain of those Leases, and otherwise denies the allegations in Paragraph 14 of the Complaint.

15.      Frontier admits the allegations in Paragraph 15 of the Complaint.

16.      Frontier admits the allegations in Paragraph 16 of the Complaint.

17.      Frontier admits the allegations in the first sentence of Paragraph 17 of the Complaint.  Frontier denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence in Paragraph 17 of the Complaint.  Frontier

denies the remaining allegations in Paragraph 17, except admits that pursuant to the transfer of AMCK Aviation Holdings' assets to Carlyle Aviation Partners and its affiliates, Maverick owns Accipiter and Vermillion.

18.    Frontier admits that Manchester is a company incorporated under the law of Luxembourg and that pursuant to the transfer of AMCK Aviation Holdings' assets to Carlyle Aviation Partners and its affiliates, Manchester is owned by Maverick, and otherwise denies the allegations in Paragraph 18 of the Complaint.

19.    Frontier admits the allegations in Paragraph 19 of the Complaint.

20.    Frontier admits the allegations in Paragraph 20 of the Complaint.

21.    Paragraph 21 of the Complaint purports to state legal conclusions as to which no response is required.

22.    Paragraph 22 of the Complaint purports to state legal conclusions as to which no response is required.

23.    Paragraph 23 of the Complaint purports to describe Section 20.15 of the Leases. Frontier respectfully refers to Section 20.15 of the Leases for its content.  The second sentence of Paragraph 23 purports to state a legal conclusion as to which no response is required.  To the extent a response is required, Frontier states that for purposes of this proceeding Frontier does not object to venue in the United States District Court for the Southern District of New York, and otherwise denies the allegation in Paragraph 23 of the Complaint.

24.    Frontier admits that it is party to lease agreements with Plaintiffs for thirteen Airbus A320 aircraft, and otherwise denies the allegations in the first sentence of Paragraph 24 of the Complaint.  The second and third sentences of Paragraph 24 purport to describe the Leases and Exhibit 1 to the Complaint.  Frontier respectfully refers to the Leases for their contents.

25.    Paragraph 25 of the Complaint purports to describe the Leases.  Frontier respectfully refers to the Leases for their contents.

26.    Paragraph 26 of the Complaint purports to describe the Leases.  Frontier respectfully refers to the Leases for their contents.

27.    Frontier denies the allegations in Paragraph 27 of the Complaint, except admits that Accipiter is the Owner Participant for thirteen Leases with Frontier and Vermillion is the Owner Participant for one Lease.

28.    Frontier admits the allegations in Paragraph 28 of the Complaint.

29.    The first and second sentences of Paragraph 29 of the Complaint purport to state legal conclusions as to which no response is required.  To the extent any response is required, Frontier denies the allegations in the first and second sentences of Paragraph 29 and respectfully refers to the Leases.  Frontier denies the allegations in the third sentence of Paragraph 29 and refers to the Leases for their content.

30.    Paragraph 30 of the Complaint purports to describe the Leases.  Frontier respectfully refers to the Leases for their contents.  Frontier otherwise denies the allegations in Paragraph 30.

31.    Paragraph 31 of the Complaint purports to contain quoted text from the Leases, as to which no response is required.  To the extent any response is required, Frontier respectfully refers to the Leases and otherwise denies the allegations in Paragraph 31 due to the incompleteness of the excerpt and lack of proper context.

32.    Paragraph 32 of the Complaint purports to contain quoted text from the Leases, as to which no response is required.  To the extent any response is required, Frontier respectfully

refers to the Leases and otherwise denies the allegations in Paragraph 32 due to the incompleteness of the excerpt and lack of proper context.

33.    Paragraph 33 of the Complaint is argumentative and purports to state legal conclusions as to which no response is required.  To the extent any response is required, Frontier respectfully refers to the Leases and otherwise denies the allegations in Paragraph 33 of the Complaint.

34.    Frontier denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 of the Complaint.

35.    Frontier denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35 of the Complaint.

36.    Paragraph 36 refers to a publicly available document.  Frontier respectfully refers to that document for its content.

37.    Paragraph 37 refers to a publicly available document.  Frontier respectfully refers to that document for its content.

38.    Frontier admits that discovery has closed in the 2020 Litigation, and otherwise denies the allegations in Paragraph 38 of the Complaint.

39.    Frontier admits that a December 2021 press release from Carlyle Aviation Partners stated that AMCK reached an agreement to sell its entire aircraft portfolio to Carlyle Aviation Partners and certain other affiliated entities. Frontier denies knowledge or information sufficient to form a belief as to the truth or falsity of the announcement described in Paragraph 39 of the Complaint.  Frontier otherwise denies the allegations in Paragraph 39.

40.     Frontier admits that Vermillion Holdings transferred Manchester to Maverick, and otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 of the Complaint.

41.     Frontier admits the allegations in the first sentence of Paragraph 41 of the Complaint.  The second and third sentences of Paragraph 41 of the Complaint purport to state legal conclusions as to which no response is required.  To the extent any response is required, Frontier denies the allegations in the second and third sentences of Paragraph 41 of the Complaint and respectfully submits that these allegations are in dispute in the 2022 Litigation.

42.     Frontier denies the allegations in Paragraph 42 of the Complaint, and respectfully submits that these allegations are in dispute in the 2022 Litigation.

43.     Frontier admits that on or about April 13, 2022, CAML sent Frontier notices purporting to provide notice that CAML had replaced AMCK Aviation Holdings as Lease Manager under each of the Leases, and otherwise denies the allegations in Paragraph 43 of the Complaint.  These allegations are in dispute in the 2022 Litigation.

44.     Paragraph 44 refers to a publicly available document.  Frontier respectfully refers to that document for its content.

45.     Paragraph 45 refers to a publicly available document.  Frontier respectfully refers to that document for its content.

46.     The first and second sentences of Paragraph 46 refer to a publicly available document.  Frontier respectfully refers to that document for its content.  Frontier denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 46 of the Complaint.

47.    The first and second sentences of Paragraph 47 refer to publicly available documents.  Frontier respectfully refers to those documents for their contents.  Frontier denies the allegations in the third sentence of Paragraph 47 of the Complaint.

48.    Frontier admits that after the filing of the lawsuit captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, No 22-cv-02943-PAE (S.D.N.Y.), certain Plaintiffs made certain requests of Frontier to affirm and acknowledge the allegedly new owners and their alleged rights over the Leases and the Aircraft.  Frontier otherwise denies the allegations in Paragraph 48 of the Complaint.

49.    Frontier admits that the parties entered into a Non-Waiver and Preservation of Rights Agreement.  Frontier refers to the Non-Waiver Agreement for its content and otherwise denies the allegations in Paragraph 49 of the Complaint.

50.    Frontier admits the allegations in Paragraph 50 of the Complaint.

51.    Paragraph 51 of the Complaint purports to contain quoted text from the Non-Waiver Agreement, as to which no response is required.  To the extent any response is required, Frontier respectfully refers to the Non-Waiver Agreement for its content.

52.    Frontier denies the allegations in Paragraph 52.

53.    Frontier denies the allegations in Paragraph 53 of the Complaint.

54.    Frontier admits that in late November 2022, certain Plaintiffs requested that Frontier review certain security assignment documents and lease amendments, and otherwise denies the allegations in Paragraph 54 of the Complaint.

55.    Frontier admits that in November and December 2022, Frontier and CAML exchanged multiple letters regarding CAML's intent to sell four of the Aircraft.  Frontier refers

to those communications for their contents, and otherwise denies the allegations in Paragraph 55 of the Complaint.

56.    Frontier denies the allegations in Paragraph 56 of the Complaint.

57.    Frontier admits that it proposed certain contract language necessary to protect Frontier's rights, including its rights in connection with the pending litigation in the 2022 Litigation, Frontier's ability to collect on its pending claim of contract breach in the framework agreement lawsuit, and Frontier's ability to use or operate the aircraft, but Plaintiffs refused to include this necessary language.  Frontier otherwise denies the allegations in Paragraph 57 of the Complaint.

58.    Paragraph 58 of the Complaint purports to contain quoted text from Frontier's revisions to CAML's draft Security Assignment, as to which no response is required.  To the extent any response is required, Frontier respectfully refers to the document for its content.

59.    Paragraph 59 of the Complaint purports to contain quoted text from a draft Lease Assignment, as to which no response is required.  To the extent any response is required, Frontier respectfully refers to the document.

60.    Frontier denies the allegations in Paragraph 60 of the Complaint.

61.    Frontier admits that on March 24, 2023, CAML sent Frontier a limited partial guaranty proposal, and otherwise denies the allegations in Paragraph 61 of the Complaint.

62.    Frontier admits the allegations in the first sentence of Paragraph 62 of the Complaint.  The remainder of Paragraph 62 of the Complaint purports to describe CAML's draft guaranty.  Frontier respectfully refers to the draft for its content and otherwise denies the allegations in Paragraph 62.

63.     Frontier admits that Frontier made several counterproposals including a counterproposal on May 5, 2023, refers to that proposal for its contents, and otherwise denies the allegations in Paragraph 63 of the Complaint.

64.     Frontier denies the allegations in Paragraph 64 of the Complaint.

65.     Frontier denies the allegations in Paragraph 65 of the Complaint.

66.     Frontier denies the allegations in Paragraph 66 of the Complaint.

67.     Frontier admits that CAML sent a letter to Frontier dated April 27, 2023.  Frontier respectfully refers to such letter for its contents and otherwise denies the allegations in Paragraph 67 of the Complaint.

68.     Frontier admits that Frontier sent a letter to CAML dated May 3, 2023, and that on May 26, 2023, CAML served Frontier with a notice of default on fourteen Leases.  Frontier respectfully refers to its May 3, 2023 letter and the May 26, 2023 notice of default for their contents and otherwise denies the allegations in Paragraph 68 of the Complaint.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT OF THE LEASES)**

69.     Frontier repeats and realleges each of its responses to Paragraphs 1 through 68 of the Complaint.

70.     Paragraph 70 of the Complaint purports to state a legal conclusion as to which no response is required.

71.     Frontier denies the allegations in Paragraph 71 of the Complaint.

72.     Paragraph 72 of the Complaint purports to describe the contents of Section 20.2(b) of the Leases.  Frontier respectfully refers to Section 20.2(b) of the Leases for its content and otherwise denies the allegations in Paragraph 72.

73.     Frontier denies the allegations in Paragraph 73.

74.     Frontier denies the allegations in Paragraph 74.

75.     Frontier denies the allegations in Paragraph 75.

## SECOND CLAIM FOR RELIEF
## (BREACH OF CONTRACT OF THE NON-WAIVER AGREEMENT)

76.     Frontier repeats and realleges each of its responses to Paragraphs 1 through 75 of the Complaint.

77.     Paragraph 77 of the Complaint purports to state a legal conclusion as to which no response is required.

78.     Frontier denies the allegations in Paragraph 78 of the Complaint.

79.     Paragraph 79 of the Complaint purports to describe the Non-Waiver Agreement. Frontier respectfully refers to the Non-Waiver Agreement for its content.

80.     Frontier denies the allegations in Paragraph 80.

81.     Frontier denies the allegations in Paragraph 81.

82.     Frontier denies the allegations in Paragraph 82.

83.     Frontier denies the allegations in Paragraph 83.

## THIRD CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

84.     Frontier repeats and realleges each of its responses to Paragraphs 1 through 84 of the Complaint.

85.     Frontier denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 85 of the Complaint.

86.     Frontier denies the allegations in Paragraph 86.

87.     Frontier denies the allegations in Paragraph 87.

## DEFENSES

Frontier, without alleging or admitting that it bears the applicable burden of proof or persuasion concerning any of these matters, asserts the following defenses. Frontier reserves the right to assert such additional defenses and/or counterclaims as may become applicable during the course of this litigation.

## FIRST DEFENSE

1.      The Complaint fails to state a claim upon which relief may be granted. Among other things, the Complaint fails to adequately allege that Frontier breached the Leases, fails to adequately allege that Frontier breached the Non-Waiver Agreement, and fails to adequately allege that with respect to Plaintiffs' tortious interference with prospective business advantage Frontier acted solely out of malice or used dishonest, unfair, or improper means.

## SECOND DEFENSE

2.      Plaintiffs' claims are barred, in whole or in part, by their prior breaches of the Leases and failure to perform under those agreements, including but not limited to the following. Under Section 402 of Article 2A (Leases) of the Uniform Commercial Code, Plaintiffs' failure to comply with their obligations under a lease suspended any contractual obligation to perform on the part of Frontier. N.Y. U.C.C. § 2A-402. Each of the Leases provides for Frontier's consent to certain lease transfer transactions only in circumstances where certain preconditions have been satisfied, in order to ensure that Frontier's rights under the agreements will not be impaired, as set out in the Lease Agreements, Lessee's Documents (as defined in each of the Leases), and Participation Agreements. Plaintiffs breached the Leases, including the Lease Agreements, Guaranties, and Participation Agreements, by, among other things, failing to provide notice or inform Frontier of the transfer of interests in the Leases to CAML and its affiliates, failing to provide information in compliance with the Leases concerning the transfer to CAML and its

affiliates, and denying that the lease transfer and assignment provisions even applied to the CAML transaction.  Plaintiffs further breached the Leases by failing to provide Frontier with assurances that its rights and interests under the Leases would not be diminished as a result of the proposed security assignments and transfers CAML seeks to complete, or to provide Frontier with sufficient information to properly assess the net impact of the transactions on Frontier's interests under the Leases.  Additionally, Plaintiffs have not paid or agreed to pay "Lessee's reasonable and invoiced out-of-pocket costs and expenses incurred in connection with its cooperation with Lessor under . . . Clause 20.2(a) [of the Leases], including reasonable legal fees."  Lease § 20(a)(v).  Plaintiffs have also failed to facilitate negotiation of a new tripartite agreement including the alleged new owner(s) of the Aircraft, which is necessary to preserve Frontier's ability to operate the Aircraft using the presently installed engines, as contemplated by Sections 20.2(a)(i)-(iii) of the Leases.  Without a new tripartite agreement, the proposed sales to the third parties could not close, yet Carlyle continued to pressure Frontier to finalize documents and insist Frontier was holding up the sale despite the fact that closing could not take place due to Plaintiffs' own failure to act. Carlyle was not entitled to hold Frontier's failure to consent against it until it removed these barriers to the proposed transfers.

### THIRD DEFENSE

3.      Plaintiffs' claims, in whole or in part, are barred due to lack of causation.

### FOURTH DEFENSE

4.      Plaintiffs' claims, in whole or in part, are barred by the doctrine of unclean hands. Among other things, Plaintiffs have acted in bad faith by intentionally failing to disclose the CAML transfer to Frontier, failing to provide sufficient details concerning the transfer of the Aircraft from AMCK to CAML and its affiliates, attempting to transfer interests in the Aircraft without proving assurances to Frontier that its rights and interests under the Leases would not be

diminished and while refusing to provide sufficient information to Frontier for it to evaluate the impact of such transactions on its interests in the Leases, issuing the notices of default on May 26, 2023, in which Plaintiffs threatened to ground, deregister, and impound the Aircraft unless Frontier ceded to Plaintiffs' demands, insisting on extra-contractual concessions as a condition of withdrawing the improper default notices, and filing this lawsuit on May 31, 2023, prior to the expiration of the notice and cure period provided for under the Leases and before any of the alleged defaults could possibly have matured to events of default.

## FIFTH DEFENSE

5.      Plaintiffs' claims, in whole or in part, are barred because Plaintiffs have failed to specify or demonstrate actual harm or damages, including damages allegedly arising out of "additional interest" and "other payments" allegedly incurred, as well as "proceeds" from alleged potential sales of the Aircraft.

## SIXTH DEFENSE

6.      Plaintiffs have failed to mitigate damages.

## SEVENTH DEFENSE

7.      Plaintiffs' claims, in whole or in part, are barred by the doctrine of res judicata and/or estoppel.  The parties are actively involved in litigation before this Court in the action captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, No. 22-cv-02943-PAE (S.D.N.Y.), in which Frontier brings claims against Plaintiffs for breaches of the Leases, Guaranties, and Participation Agreements arising from Plaintiffs' failure to comply with the same transfer and notice requirements that are at issue in this case.  Any ruling in that case substantiating Frontier's position with respect to these provisions should be binding upon the Plaintiffs in this action.

## COUNTERCLAIMS

Defendant-Counterclaim Plaintiff Frontier Airlines, Inc. ("Frontier") states its counterclaims against Plaintiffs-Counterclaim Defendants Carlyle Aviation Management Limited ("CAML" and together with its affiliates, "Carlyle"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.a r.l. ("Manchester"), Wells Fargo Trust Company, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("Wells Fargo"), and UMB Bank, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("UMB") (collectively, "Counterclaim Defendants") as follows:

## JURISDICTION

1.      This Court has subject matter jurisdiction over Frontier's Counterclaims pursuant to 28 U.S.C. § 1367(a) because the Counterclaims are so related to Plaintiffs' claims against Frontier that they form part of the same case or controversy under Article III of the United States Constitution.

2.      This Court also has subject matter jurisdiction over Frontier's Counterclaims pursuant to 28 U.S.C. § 1332 because Counterclaim-Plaintiff and Counterclaim-Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiffs' improper extra-contractual actions have required Frontier to expend more than $250,000 in attorneys' fees (exclusive of fees and costs incurred in connection with any of the pending lawsuits) that Plaintiffs have refused to reimburse, despite conceding that such fees are required to be paid under the Leases.  Frontier has also suffered damages, in amounts to be determined at trial, due to operational limitations and reputational harm caused by Plaintiffs' misconduct and defaults.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) and because Counterclaim-Defendants are subject to the Court's personal jurisdiction by agreement of parties.

4.      Further, the parties submitted to the jurisdiction of this Court by agreement.  The Leases, Guaranties, and Participation Agreements each provide that the parties to each respective agreement irrevocably submit to the jurisdiction of this Court with respect to any suit, action, or proceeding relating to the respective agreement or any matter between the parties arising under or in connection with the agreement or any related Lease Document (as defined in each Lease).

**A.    The Leases**

5.      In this third installment of the overall dispute among the parties, Frontier brings these Counterclaims to address Counterclaim-Defendants' repeated and recent failures to abide by the leases (the "Leases") governing Frontier's leasing of fourteen aircraft (the "Aircraft").

6.      Thirteen of the fourteen Leases are subject to substantially similar form lease agreements referred to as an Aircraft Operating Lease Agreement ("Lease Form 1"). These leases each provide that the transfer of beneficial ownership, the grant of participations in the lease or other Operative Documents, or any other transfer or disposal of rights and obligations under the agreements are subject to certain preconditions.

7.      Section 20.2(a) of Lease Form 1 provides in relevant part:

> Each of Lessor and Owner Participant (and any subsequent permitted assignee or transferee) shall have the right at any time, at its own expense and upon prior written notice to Lessee, to transfer ownership or beneficial ownership, as applicable, of the Aircraft, or to assign (including to assign as security), mortgage, novate, transfer, grant participations in, or otherwise dispose of its rights and obligations under this Agreement and the other Operative Documents, to any other person by outright transfer or assignment or collateral assignment or by operation of law and Lessee hereby consents to any such transfer or assignment; provided that:
>
> (i) Lessee shall have no greater financial obligation or liability under this Agreement and the other Lessee Documents as a result of such transfer based on the facts and circumstances existing and applicable laws in effect at the time

of such transfer, than it would have had if such transfer had not taken place . . .

(ii) such transfer shall not result in any restriction, based on the facts and circumstances existing and applicable laws in effect at the time of such transfer, on Lessee's rights under this Agreement or the other Lessee's Documents or on Lessee's use or operation of the Aircraft;

(iii) in the case of a sale of the Aircraft by Lessor or transfer of the beneficial interest of Owner Participant in the Aircraft or a transfer (other than to an Affiliate of the Lessor Guarantor) of a controlling interest in the Owner Participant, any such assignee or transferee shall be a Permitted Transferee and shall unconditionally guaranty the obligations of Lessor under this Agreement pursuant to a Guarantee in form substantially similar to the Guarantee executed by Owner Participant in favor of Lessee unless the existing Lessor Guarantee will remain in full force and effect following such transfer;

…

(v) Lessor shall have reimbursed to Lessee (or shall have agreed in writing to promptly reimburse to Lessee following such assignment, transfer or novation) Lessee's reasonable and invoiced out-of-pocket costs and expenses incurred in connection with its cooperation with Lessor under this Clause 20.2, including reasonable legal fees.

8.      The remaining lease utilizes a different basic form ("Lease Form 2").  Section

22.3 of Lease Form 2 provides in relevant part:

Lessor may sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent (a "Transfer"), subject to the following conditions:

(i) the proposed purchaser, assignee or transferee (the "Transferee") shall enter into an agreement, reasonably satisfactory to Lessee, assuming all obligations of Lessor under this Lease and the other Operative Documents and of Beneficiary under the Participation Agreement and other Operative Documents;

(ii) Lessor shall be responsible for Lessee's reasonable legal fees and other reasonable costs and expenses incurred in respect of such Transfer and shall pay such costs and expenses promptly upon demand therefor;

. . .

(v) any Transfer will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer), . . . .

9.    Each of the Leases is guaranteed by the Owner Participant or a parent company.

10.    Among other requirements set forth in the Guarantees, each Guarantor agrees to be liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by Frontier in connection with the enforcement of the Guarantee.

11.    The Owner Participant of the Lease governed by Lease Form 2 also entered into a Participation Agreement with Frontier.

12.    Pursuant to the Participation Agreement, the Owner Participant may sell or transfer its interest *only* if all of the following conditions are met:

(1) the proposed transferee confirms in writing, in a form reasonably satisfactory to Frontier, its undertaking to perform the obligations of Owner Participant in a form substantially similar to the Participation Agreement;

(2) the Owner Participant pays Frontier's reasonable legal fees and costs incurred in connection with the transfer;

(3) the transferee entity meets certain requirements, including that it is a citizen of the U.S.; not an airline or aircraft operator; and has, or through a guarantee acceptable to Frontier by a person having, a minimum net worth of a specified value in the tens of millions of dollars;

(4) the transfer does not increase Frontier's obligations or risks or diminish Frontier's rights and benefits under any of the lease documents; and

(5) the transfer does not affect the registration of the aircraft.

13.    These provisions are each designed to protect Frontier in the event of any transfer (directly or indirectly) of an ownership interest with respect to the Leases or the Aircraft and to ensure that transfers, assignments, and novations—which are a regular occurrence in the airline finance industry—are conducted in a manner that do not increase lessee's risks or liabilities or otherwise diminish the lessee's rights in the Leases, Lessee's Documents, or Aircraft.

14.    Lessees in the aircraft leasing market are permitted and expected to investigate any proposed transaction, pursuant to which interests in the lease are to be transferred, to confirm that the transfer preconditions under the lease are satisfied, and to receive assurances from the

existing lessor parties as well as documentary evidence that any fees incurred by lessee will be paid, the requirements under the Leases will be satisfied after the transfer, including that the transferee will meet the criteria of a permitted transferee; and the transaction will not prejudice lessee's rights under the Lease and each of the Lessee's Documents, including but not limited to any warranty documents.

15.     The Leases also protect Frontier from disturbances, interferences, and threats to its use and quiet enjoyment of the Aircraft.

16.     Section 4.3(a) of Lease Form 1 state provides:

(a) Quiet Enjoyment. Subject to the provisions of this Agreement, including the provisions for early termination, or unless compelled to do so by any applicable law, so long as no Event of Default has occurred and is continuing, Lessor will not disturb the continuous quiet use, possession and enjoyment of the Aircraft by Lessee during the Term.

17.     Similarly, Section 9.1 of the Lease Form 2 states that "provided no Event of Default has occurred and is continuing," Lessor shall not "interfere with the quiet use, possession and enjoyment of the Aircraft by Lessee . . . during the Lease Period. . . ." Section 2.1(b)(5) of the Participation Agreement further provides that the Owner Participant covenants to Frontier that Frontier will have quiet enjoyment of the Aircraft throughout the term of the Lease.

**B.     The Parties' Dispute**

18.     At the time the Leases were executed, the Aircraft were beneficially owned by AMCK Aviation Holdings Ireland Limited and its affiliates (collectively "AMCK")—through Wells Fargo and UMB as owner trustees.

19.     In March 2020, Frontier and AMCK entered into a Framework Agreement (the "Framework Agreement") for six additional leases of aircraft.  Under the Framework Agreement, AMCK committed to purchasing six Airbus aircraft and then lease them to Frontier.

20.     Almost immediately, AMCK repudiated the Framework Agreement because of the adverse effect the COVID-19 pandemic had on aircraft financing markets.  On May 8, 2020, without warning, AMCK issued Frontier a Notice of Termination of the Framework Agreement, retracting its commitment to purchase five of the six aircraft as provided in the agreement.

21.     To avoid a default with Airbus, Frontier was forced to secure last-minute sources of financing on the verge of the aircraft deliveries, on terms that were substantially less favorable than those committed to by AMCK, causing more than $50 million in damages to Frontier.

22.     On November 18, 2020, Frontier filed suit (the "Framework Agreement Action") to recover the losses Frontier sustained because of AMCK's failure to uphold its end of its bargain with Frontier, alleging (among other things) that AMCK anticipatorily repudiated the Framework Agreement.

23.     On May 5, 2021, AMCK's motion to dismiss the action was denied.

24.     More recently, on July 6 2023, the court denied AMCK's motion for summary judgment as to Frontier's core claim for breach of the Framework Agreement against AMCK. The court found that there were "clear questions of fact whether the parties [agreed] to suspend payments" under the Leases due to the unforeseen circumstances of the COVID-19 pandemic and, if the parties had, then AMCK's subsequent non-performance was an unjustified breach of the Framework Agreement.  The action remains pending and the parties are preparing for trial.

25.     During the pendency of the lawsuit, AMCK reached an agreement to sell its entire aircraft portfolio to Carlyle Aviation Partners and certain other affiliated entities, including Counterclaim-Defendant CAML.  A December 2021 press release from Carlyle Aviation Partners (the "Press Release") announced the sale.

26.     Despites its ongoing business relationship with AMCK and the active litigation between AMCK and Frontier, neither AMCK nor CAML informed Frontier of the sale.  Rather, Frontier learned of the sale when it discovered the Press Release in January 2022.

27.     Upon review of publicly available financial statements and other corporate records of relevant entities, Frontier came to understand that AMCK conducted a series of internal transfers that effectively relinquished AMCK's ownership of valuable assets, including companies holding the AMCK subsidiaries that had leased the Aircraft to Frontier, for less than fair market value.  Based on Frontier's review of financial statements, these transfers left AMCK Aviation Holdings with approximately 2% of its former assets.

28.     As a result of these improper transfers, Frontier determined that AMCK Aviation Holdings was unlikely to be solvent to pay any judgment obtained by Frontier in the Framework Agreement Action.

29.     On January 4, 2022, Frontier made a written demand on AMCK for documents and information relevant to the transfer of ownership interests to CAML and its affiliates.

30.     Despite its obligations under the Leases, AMCK denied that the sale was a "transfer" under the leases and provided no information.

31.     On or about April 13, 2022, CAML notified Frontier that its transaction with AMCK had closed and stated that CAML had taken over as the new Servicer with respect to the aircraft leased to Frontier.

32.     Frontier objected to the transactions and to CAML's purported designation as Servicer.  CAML did not respond to Frontier's objections.

33.     In June 2022, CAML notified Frontier that it had assigned as security all of its rights under certain Leases to a third-party lender and demanded that Frontier add the new

parties as additional insured under its insurance.  Just as in the transfer from AMCK to Carlyle, CAML provided Frontier no notice or opportunity to comment prior to executing that assignment, in violation of the Leases.  Frontier responded to those notices by providing comments and markups, and CAML ignored Frontier's correspondence.

34.     In light of Counterclaim-Defendants' conduct in connection with the sale to Carlyle and the subsequent security assignment, on June 22, 2022, Frontier filed an action captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, et al., No. 22-cv-02943-PAE (S.D.N.Y.) ("Lawsuit 2").  The Counterclaim-Defendants are each a defendant in Lawsuit 2.

35.     In Lawsuit 2, Frontier brought claims for breach of the Leases arising from the AMCK/Carlyle transaction, as well as the June 2022 security assignments.  Frontier also brought claims against CAML for actual and constructive fraudulent transfer arising out of CAML's raiding of AMCK's assets, which rendered AMCK judgment proof and frustrated Frontier's ability to collect on a judgment in the Framework Agreement Action.

36.     The Court denied defendants' motion to dismiss Frontier's contract claims, but dismissed Frontier's claims for declaratory relief and fraudulent transfer on June 7, 2023.

37.     On July 18, 2023, the Court in Lawsuit 2 granted a preliminary injunction against Wells Fargo and UMB that prohibits the owner trustees from impounding, grounding, or deregistering the Aircraft pursuant to the notices of default issued by CAML on May 26, 2023. The Court found that Frontier had raised sufficiently serious questions going to the merits of the parties' dispute as to whether Frontier was required to consent to the AMCK/Carlyle transaction, and that the balance of hardships weigh decisively in Frontier's favor.

38.     While that action was pending, in November 2022, Carlyle informed Frontier that it wanted to sell four of its aircraft to two separate third parties.

39.     On November 23, 2022, Frontier sent CAML a letter asking for additional details about the transfers.

40.     Hours later, on the same day, CAML sent Frontier proposed security assignments for all of the Aircraft without responding to—or even acknowledging—Frontier's letter.  CAML did not address Frontier's concerns about the impact of the proposed transactions on Frontier's right to recovery in the two litigations.

41.     CAML did not clearly explain how these security assignments related to the other contemplated transactions but nonetheless demanded that Frontier acknowledge them as valid and prioritize CAML's requests in connection with these assignments.

42.     Agreeing to what CAML demanded would prejudice Frontier's claims in Lawsuit 2 that AMCK had wrongfully transferred the Aircraft to Carlyle and improperly engaged in the June 2022 security assignments, as well as Frontier's ability to collect on a judgment in the Framework Agreement Action.

43.     Nevertheless, Frontier engaged with Carlyle to negotiate an appropriate commercial solution that addressed Frontier's concerns.

44.     Frontier and CAML held a counsel call on December 5, 2022 to discuss these communications.  On that call, CAML committed to provide a detailed chart setting out the proposed structure and timing of the transactions, including information about the identity and corporate relationship of each party to the transactions.

45.     However, the chart that CAML provided to Frontier after the call did not explain the corporate relationship between the parties, contained only vague assertions about transaction

timing, and did not contain relevant information about the transaction parties and the specific timing for each of the proposed transactions.

46.     Frontier also understood—and expressed to Carlyle on the December 5, 2022 counsel call—that certain of Carlyle's proposed assignments could not move forward even with Frontier's consent, because a condition of such transfer would be the execution of a new tripartite agreement between CFM, who manufactures the engines used in the Aircraft, Frontier, and the proposed transferees.  CAML acknowledged that no new tripartite agreement was in place as of that time, nor did it have a definitive timeline for the negotiation of a new agreement.

47.     On information and belief, to date, CAML still has not completed the negotiation for a new tripartite agreement with CFM.

48.     In subsequent communications between December 2022 and mid-January 2023, CAML continued to provide incomplete information about the identities of all relevant parties to the transactions.  CAML's actions prevented Frontier from understanding the net effect of the transactions on Frontier's rights under the Leases and in connection with its pending lawsuits.

49.     CAML also continued to deny that Frontier had any basis to protect its rights in connection with the proposed transfers because, in its view, the pending litigation was meritless.

50.     Frontier proposed that the transaction documents acknowledge Frontier's right to recover in the pending litigations and protect Frontier's right to execute against the Aircraft should the defendants be otherwise unable to satisfy a judgment against them.

51.     On February 9, 2023, CAML rejected Frontier's proposed protective language and instead proposed addressing Frontier's concerns by adding a conclusory statement that the assignments would not be "a waiver of any contractual or extra contractual right or as a waiver

of any claim, right or defense by any person, trust or other entity in connection with" the pending litigations.

52.    The proposal contained no affirmative protections of Frontier's right to an adequate remedy in the pending litigations, and CAML continued to deny that Frontier's right to seek recovery in the pending lawsuits was contractual.

53.    On March 24, 2023, CAML proposed a guaranty from a solvent Carlyle entity that would be unsecured.  The guaranty expressly excludes liabilities of AMCK and would cover only the liability that a Carlyle-owned entity would have to Frontier in the lawsuit for as long as they were owned by Carlyle while imposing additional obligations on Frontier to complete the proposed transfers for CAML.

54.    Frontier rejected the proposal on the ground that the proposed guaranty did not guarantee payment of a judgment against AMCK, the owner trustees, or any liability against any entity not owned by Carlyle, that the guarantee was to be executed by another entity controlled by Carlyle that could easily be stripped of all assets and rendered unable to honor it, that the proposed guaranty would necessitate that Frontier file another lawsuit to enforce it, and for other reasons.

55.    Frontier proposed a counteroffer to address its concerns on April 7, 2023.

56.    On April 24, 2023, CAML rejected Frontier's April 7, 2023 counteroffer, and did not materially change its initial guaranty proposal.

57.    In the middle of the parties' ongoing negotiations, CAML abruptly sent Frontier a letter on April 27, 2023, asserting that Frontier had breached the Leases and the parties' Non-Waiver and Preservation of Rights Agreement entered into after the filing of Lawsuit 2.

58.     On May 3, 2023, Frontier sent a letter in response to CAML's letter to correct CAML's factual inaccuracies and dispute CAML's allegations.  Nonetheless, Frontier expressed its continued desire and willingness to negotiate toward mutually agreeable terms and sent revised proposal on May 5, 2023, to which CAML did not respond.

59.     Frontier did not hear further from CAML on these issues for nearly a month.

60.     Then, on May 26, 2023, the Friday before Memorial Day weekend, CAML served on Frontier fourteen notices of default.

61.     The notices alleged that Frontier was in default as a result of its failure to execute transfer documents presented by Carlyle, and invoked Section 20.2(b) of Lease Form 1.

62.     The notices threatened, among other things, to ground, impound, or deregister the Aircraft upon expiration of the 15-day cure period, should Frontier fail to cure the alleged default.

63.     The notices falsely allege that Frontier has defaulted under the Leases, which it has not.

64.     Along with the default notices, Plaintiffs filed this action.

65.     The default notices led Frontier to seek emergency relief in Lawsuit 2 to prevent Carlyle from improperly exercising the extreme remedies of grounding, impounding, and deregistering the Aircraft, as Frontier was faced with consenting to transfers and assignments that violated its contractual rights and interests or having key and necessary portions of its fleet grounded, which would cause Frontier irreparable harm.

66.     The Court entered a temporary restraining order on June 8, 2023, prohibiting Counterclaim-Defendants Wells Fargo and UMB from exercising their threat.  The Court

subsequently granted a preliminary injunction on July 18, 2023, and scheduled a status conference for August 10, 2023.

67.    On July 3, 2023, while Frontier's motion was pending, CAML made a non-binding proposal containing a revised guaranty.  The proposed revised contained improved terms compared to the original guaranty, but was still substantially deficient.  It covered all defendants in the Framework Agreement litigation, it provided that the guarantor submit quarterly certifications of net worth of at least $65 million, and it stated that the guaranty would terminate only if Frontier defaults by not paying rent.

68.    However, the proposed guarantor is Maverick Aviation (Ireland) DAC, a Carlyle-owned, special-purpose entity that Carlyle has the ability to raid of assets at any time, and there is no enforcement mechanism if the guarantor fails to maintain an adequate net worth or files for bankruptcy.  In any such scenario, the proposed guaranty would be worthless to Frontier, and the proposal does not protect Frontier from facing such a scenario.

69.    The revised guaranty proposal also imposes extra-contractual requirements, including a requirement that Frontier move aircraft to any state that the Counterclaim-Defendants dictate—in violation of Frontier's quiet enjoyment rights—and a new unspecified "cap" on Frontier's contractually guaranteed legal fees incurred in connection with reviewing proposed transaction terms and documentation between old and new lessors.  Both of these terms run afoul of well-established industry standards and violate the Leases and impact Frontier's rights under the agreements.

**FIRST CLAIM FOR RELIEF
(BREACH OF CONTRACT)**

70.    Frontier repeats and realleges each allegation in Paragraphs 1 through 69 of the Counterclaims.

71.    Frontier and Counterclaim-Defendants are party to the Leases.

72.    Frontier has performed its obligations under each Lease.

73.    Under Section 20.2(a) of Lease Form 1, Frontier is required to consent to an assignment or transfer only to the extent certain conditions are met.

74.    Section 20.2(a)(ii) of Lease Form 1 further allows Frontier to withhold consent to a transaction if that transaction would "result in any restriction, based on the facts and circumstances existing . . . , on Lessee's rights under this Agreement or the other Lessee's Documents . . . ."

75.    Section 22.3 of Lease Form 2 provides that any Transfer "will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer), . . . ."  Additionally, Section 2.1(b)(4) of the Participation Agreement requires the Owner Participant to cause the Lessor to perform all of its obligations under the Leases.

76.    Counterclaim-Defendants breached the Leases and the Participation Agreement by failing to provide Frontier, in accordance with Section 20.2(a)(ii) of Lease Form 1, Section 22.3 of Lease Form 2, and Section 2.1(b)(4) of the Participation Agreement, with reasonable assurances in connection with the sale of four of the Aircraft that such sale will not restrict or otherwise diminish Frontier's rights and interests under the Leases and its use the Aircraft, or harm Frontier's ability to recover on a judgment in the Framework Agreement Action.

77.    Counterclaim-Defendants' breaches have damaged Frontier, including by causing Frontier to expend more than $250,000 in attorneys' fees that Plaintiffs have refused to

reimburse, despite conceding that such fees are required to be paid under the Leases, as well as by causing Frontier to incur harm to its operations and damage to reputation and standing in the industry in amounts to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT – QUIET ENJOYMENT)

78.     Frontier repeats and realleges each allegation in Paragraphs 1 through 77 of the Counterclaims.

79.     Frontier and Plaintiffs are parties to the Leases.

80.     Section 4.3(a) of Lease Form 1 state that "so long as no Event of Default has occurred and is continuing, Lessor will not disturb the continuous quiet use, possession and enjoyment of the Aircraft by Lessee during the Term."

81.     Similarly, Section 9.1 of the Lease Form 2 states that "provided no Event of Default has occurred and is continuing," Lessor shall not "interfere with the quiet use, possession and enjoyment of the Aircraft by Lessee . . . during the Lease Period. . . ."

82.     In Section 2.1(b)(5) of the Participation Agreement, the Owner Participant covenants to Frontier that Frontier will have quiet enjoyment of the Aircraft throughout the term of the Lease.

83.     On May 26, 2023, Counterclaim-Defendants issued notices of default to Frontier, falsely claiming that Frontier has failed "to execute a consent in a form Lessor reasonably requires."

84.     Frontier is current on all rent payments under the Leases and has performed all of its other obligations under the Leases.

85.     Among other things, the notices of default threaten to ground, impound, or deregister the Aircraft.  Prior to seeking a temporary injunction in Lawsuit 2, Frontier sought

Lessors' temporary agreement to not impound, ground or deregister the Aircraft, which Lessors expressly rejected.

86.    Counterclaim-Defendants breached Section 4.3 of Lease Form 1, Section 9.1 of Lease Form 2, and Section 2.1(b)(5) of the Participation Agreement by issuing the default notices that disturb Frontier's quiet enjoyment rights to its leasehold interests.

87.    Counterclaim-Defendants' breaches have damaged Frontier, including by causing Frontier to expend more than $250,000 in attorneys' fees that Plaintiffs have refused to reimburse, despite conceding that such fees are required to be paid under the Leases, as well as by causing Frontier to incur harm to its operations and damage to reputation and standing in the industry in amounts to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (CONSTRUCTIVE TRUST OVER THE AIRCRAFT)

88.    Frontier repeats and realleges each allegation in Paragraphs 1 through 87 of the Counterclaims.

89.    Frontier and the Counterclaim-Defendants are parties to the Leases.

90.    Frontier and the Counterclaim-Defendants have a confidential relationship due to their alleged respective interests in the Aircraft, which requires a special and unusual degree of trust between Frontier and the Counterclaim-Defendants.

91.    Frontier has a valid and continuing leasehold interest in the Aircraft that it leases from Counterclaim-Defendants pursuant to the Leases.

92.    The Aircraft were acquired by Counterclaim-Defendants as a result of the sale of AMCK's assets to CAML and its affiliates in April 2022.

93.    Counterclaim-Defendants acquired the Aircraft in such circumstances that they may not in good conscience retain the beneficial interest in them.  The transfer from AMCK to

CAML and its affiliates unjustly enriched Counterclaim-Defendants and was structured so as to avoid having to pay Frontier for damages arising out of the Framework Agreement Action.

94.     Equity and justice require that the Aircraft be placed into a constructive trust for the benefit of Frontier during the pendency of the parties' ongoing litigation in the Framework Agreement Action, Lawsuit 2, and this proceeding.

**WHEREFORE**, Frontier denies that Plaintiffs are entitled to any relief and respectfully requests that the Court grant Frontier the following relief:

(i)      A judgment denying all relief requested by Plaintiffs;

(ii)     A judgment dismissing all of Plaintiffs' claims with prejudice;

(iii)    A judgment against Plaintiffs and in favor of Frontier in all respects;

(iv)     An award to Frontier for attorneys' fees, costs, and expenses incurred in defending this action;

(v)      On the Counterclaims:

    a.   A judgment granting all relief requested by Frontier;

    b.   An award of damages for Counterclaim-Defendants' breaches of the Leases in an amount to be determined at trial, plus interest and attorneys' fees;

    c.   Creation of a constructive trust over the Aircraft during the pendency of the this action, Lawsuit 2, and the Framework Agreement Action;

    d.   An award of attorneys' fees, costs, and expenses incurred in prosecuting the Counterclaims; *and*

(vi)     Such other relief to Frontier as the Court may deem just and proper.

Dated:   New York, New York
         July 26, 2023

Respectfully Submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Tessa B. Harvey
673 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 510-7008
Email: efisher@binderschwartz.com
Email: tharvey@binderschwartz.com

David Schoeggl (*pro hac vice* forthcoming)
**LANE POWELL PC**
601 S.W. Second Avenue
Suite 2100
Portland, Oregon 97204
Telephone: (503) 778-2100
Email: schoeggld@lanepowell.com

*Attorneys for Frontier Airlines, Inc.*