UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLYLE AVIATION MANAGEMENT LIMITED, ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.à r.l., WELLS FARGO TRUST COMPANY, N.A., not in its individual capacity but solely in its capacity as OWNER TRUSTEE, UMB BANK, N.A., not in its individual capacity but solely in its capacity as OWNER TRUSTEE, <br><br> Plaintiffs, <br><br> v. <br><br> FRONTIER AIRLINES, INC. <br><br> Defendant. | Case No.: 1:23-cv-04774 (PAE) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

    I.    The Leases, the Participation Agreement, and the Parties ............................................ 2

    II.    The Pending Litigations .................................................................................................. 4

    III.    Frontier's Counterclaims .............................................................................................. 5

ARGUMENT ................................................................................................................................ 5

    I.    Applicable Standard ....................................................................................................... 5

    II.    Frontier's First Claim for Breach of Contract Should Be Dismissed for Failure to State a Claim ............................................................................................................... 6

        A.    Frontier's Claim Is Based on an Alleged Failure to Provide "Reasonable Assurances," But There Is No Such Obligation Under the Leases or the Participation Agreement. ............................................................. 6

        B.    Frontier's Claim Based on Alleged "Harm [to] Frontier's Ability to Recover on a Judgment in [Litigation 1]" Is Impermissible Claim-Splitting. ............................................................................................................... 8

    III.    Frontier Fails to Allege Any Breach of Quiet Enjoyment by Any Party to the Leases or the Participation Agreement ........................................................................ 9

    IV.    Frontier's First and Second Counterclaims Should Be Dismissed for Failure To Allege Damages ...................................................................................................... 10

        A.    Dismissal Is Appropriate When a Party Fails to Plead the Damages Element of a Claim. ................................................................................................ 10

    V.    Frontier's First and Second Counterclaims Should Be Dismissed as to Plaintiffs That Are Not Parties to the Relevant Agreements ...................................... 11

    VI.    Frontier's Third Counterclaim for Constructive Trust Must be Dismissed ................ 12

        A.    Frontier Fails to Allege a Fiduciary Relationship Between Itself and the Lessor Plaintiffs. ..................................................................................................... 12

        B.    There Has Been No Transfer in Reliance on a Promise. ................................. 14

        C.    Plaintiffs Were Not Unjustly Enriched. ............................................................. 15

CONCLUSION ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*1101-43 Ave Acquisition LLC v. Rockstar Hotels LLC, Inc.*,
  No. 653729/2019, 2020 WL 1972239 (Sup. Ct. N.Y. Cnty. Apr. 24, 2020) ............................ 14

*In re Approximately $3.5 Billion of Assets on Deposit at the Fed. Reserve Bank of N.Y. in the Name of Da Afg. Bank*,
  No. 22-03228 (GBD), 2022 WL 1239657 (S.D.N.Y. Apr. 27, 2022) ........................................ 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................5

*Austin v. Town of Farmington*,
  826 F.3d 622 (2d Cir. 2016) ................................................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................................5

*Bernstein v. O'Reilly*,
  No. 17-cv-9483 (DAB), 2019 WL 10995111 (S.D.N.Y. Mar. 5, 2019) ................................. 10

*Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
  355 F. App'x 516 (2d Cir. 2009) ............................................................................................ 13

*Bontecou v. Goldman*,
  103 A.D.2d 732 (2d Dep't 1984) ............................................................................................ 14

*Dworkin Constr. Corp. (USA) v. Marcus Grp. Inc.*,
  No. 656522/2022, 2023 WL 4697054 (Sup. Ct. N.Y. Cnty. Apr. 7, 2023) .............................. 9

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019) ..........................................................................................................6

*Flat-Marks Realty Corp. v. Silver's Lunch Stores, Inc.*,
  74 F.2d 210 (2d Cir. 1934) ..................................................................................................... 13

*Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd. et al.*,
  No. 1:20-cv-09713 (LLS) (S.D.N.Y.) ......................................................................................4

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*,
  722 F. App'x 12 (2d Cir. 2018) .............................................................................................. 13

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
  30 N.Y.3d 508 (2017) ................................................................................................................7

*Greenfield v. Philles Recs., Inc.*,
  98 N.Y.2d 562 (2002) ................................................................................................................7

*Macquarie Rotorcraft Leasing Holdings Ltd. v. LCI Helicopters (Ireland) Ltd. (In re Waypoint Leasing Holdings Ltd.)*,
   607 B.R. 143 (Bankr. S.D.N.Y. 2019) .................................................................. 10, 11

*Mamot v. Cuomo*,
   No. 21-6732 (LTS), 2021 WL 5166365 (S.D.N.Y. Nov. 5, 2021) ..................................... 12, 15

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ............................................................................................. 15

*MBIA Ins. Corp. v. Royal Bank of Canada*,
   706 F. Supp. 2d 380 (S.D.N.Y. 2009) ........................................................................ 11

*Milan Music, Inc. v. Emmel Commc'ns Booking, Inc.*,
   37 A.D.3d 206 (1st Dep't 2007) ................................................................................ 11

*Russell Publ'g Grp., Ltd. v. Brown Printing Co.*,
   No. 13-5193 (SAS), 2014 WL 1329144 (S.D.N.Y. Apr. 3, 2014) .................................. 12, 13

*Safe Step Walk In Tub Co. v. CKH Indus., Inc.*,
   No. 15-7543 (NSR), 2018 WL 4539656 (S.D.N.Y. Sept. 20, 2018) .................................. 15

*Salib v. I.C. Sys., Inc.*,
   No. 01-01083 (JCH), 2002 WL 31060368 (D. Conn. July 24, 2002) ................................. 9

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 314 (2d Cir. 2010) ....................................................................................... 6

*Superintendent of Ins. v. Ochs* (*In re First Central Fin. Corp.*),
   377 F.3d 209 (2d Cir. 2004) ..................................................................................... 14

*TDS Leasing, LLC v. Tradito*,
   148 A.D.3d 1079 (2d Dep't 2017) ............................................................................. 10

*Victory State Bank v. EMBA Hylan, LLC*,
   169 A.D.3d 963 (2d Dep't 2019) ............................................................................... 11

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002) ........................................................................ 12

Plaintiffs-Counterclaim Defendants Carlyle Aviation Management Limited ("CAML"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Vermillion Aviation Holdings Limited ("Vermillion Holdings") Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.à r.l. ("Manchester"), UMB Bank, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("UMB"), and Wells Fargo Trust Company, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("Wells Fargo") (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their Motion to Dismiss the Counterclaims filed by Defendant-Counterclaim Plaintiff Frontier Airlines, Inc. ("Frontier").

## PRELIMINARY STATEMENT

This litigation arises from Frontier's refusal to honor its contractual obligations under fourteen leases and another agreement to cooperate in good faith with Plaintiffs throughout the course of the parties' ongoing business relationship. As detailed in the Complaint (ECF No. 1-2),[1] Plaintiffs have made repeated requests for Frontier's cooperation in connection with prospective sales and refinancings of the Aircraft (defined below) that Frontier leases from certain Plaintiffs (the "Sale/Financing Transactions"). Specifically, Plaintiffs have sought Frontier's consent to certain security assignments and lease assignments, which are industry-standard, routine requests that have no impact on Frontier's use or interest in those Aircraft.

While this litigation is focused specifically on the narrow issue of the Sale/Financing Transactions, Frontier has attempted to substantially broaden the scope of this lawsuit by asserting counterclaims duplicative of claims that it is *already* litigating in pre-existing litigation between the parties—several of which have already been dismissed in those actions. Frontier's

---

[1] All capitalized terms not defined herein shall adopt their definitions found in the Complaint.

1

counterclaims concern a series of transfers affecting the upstream corporate ownership of certain Plaintiffs—which Frontier unsuccessfully alleged to be a fraudulent transfer in a separate litigation before this Court, and which have nothing to do with the Sale/Financing Transactions that form the basis for Plaintiffs' claims in the instant action. Frontier cannot raise such claims in this action to obtain another bite at the apple, because that is improper claim-splitting.

Regardless, Frontier's counterclaims fail because they have no basis in fact or law. The operative agreements do not impose any duty on Plaintiffs to provide "reasonable assurances" to Frontier regarding its rights under those contracts, and thus no such obligation could have been breached. And it is not possible for Frontier to establish the elements of a breach of quiet enjoyment, given that it continues to operate the leased aircraft without interruption or restriction. Similarly, Frontier fails to establish the elements of a constructive trust claim because its leasehold interest in the aircraft remains entirely undisturbed by the conduct and factual events underpinning its claims. Moreover, Frontier fails to allege damages in its breach of contract counterclaims and such claims cannot be sustained against parties who are not parties to the relevant agreements. For these reasons, Frontier's counterclaims should be dismissed.

## FACTUAL BACKGROUND

### I. THE LEASES, THE PARTICIPATION AGREEMENT, AND THE PARTIES

In addition to the ten leased aircraft discussed in Plaintiffs' Complaint, Frontier also leases four other passenger aircraft from certain of the Plaintiffs (collectively, the "Aircraft"). Pursuant to the Lease Agreements for the fourteen Aircraft (the "Leases"), UMB and Wells Fargo, not in their individual capacities but solely in their capacities as Owner Trustees, are the Lessors of the Aircraft (the "Lessor Plaintiffs"), while Accipiter and Vermillion are the beneficial owners, or Owner Participants of the Aircraft. CAML acts as "Servicer" of the Leases. In that capacity, CAML manages the sale, leasing, and financing of the Aircraft.

2

Thirteen Leases—including the Leases for the ten Aircraft at issue in the Complaint—contain substantially similar terms and the same format ("Lease Form 1")[2] while one Lease contains slightly different terms and format ("Lease Form 2").[3]  The Leases contain specific provisions that allow for the transfer of ownership of the Aircraft pursuant to certain conditions. The relevant Lease Form 1 transfer provisions are detailed in Plaintiffs' pleadings.  (*See* Compl. ¶¶ 30-31.)  Section 22.3 of Lease Form 2 contains a similar transfer provision allowing the Lessor to "sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent," provided certain conditions are met.  (Ex. 1 § 22.3.)[4]  In connection with Lease Form 2, Plaintiff Accipiter (the Owner Participant for that Lease) also entered into a participation agreement with Frontier relating to that Lease (the "Participation Agreement").  The Participation Agreement provided that Accipiter could transfer "all or any of its rights" under the Lease and other contracts in certain circumstances.  (Ex. 2 § 3.1(a).)

In addition to these transfer provisions, the Leases also impose on Frontier an affirmative obligation to cooperate in the administration and management of the Leases.  The relevant Lease Form 1 cooperation provisions are outlined in the Complaint.  (Compl. ¶¶ 32-33.)  Lease Form 2, in similar fashion, requires Frontier to "promptly execute (or cause to be executed) all documents reasonably requested by Lessor to effect, perfect, record or implement" certain assignments, and to "comply with any other reasonable requests of Lessor, its successors and assigns in respect of

---

[2] Those thirteen Leases relying on Lease Form 1 are for the aircraft bearing the following manufacturer's serial numbers: 8102, 8239, 8357, 8307, 8402, 8766, 8857, 8913, 8977, 9026, 9068, 9177, and 10038.

[3] The one Lease relying on Lease Form 2 is for the aircraft bearing the following manufacturer's serial number: 7524.

[4] Unless otherwise specified, "Ex. __" refers to exhibits to the Declaration of Jed M. Schwartz, filed contemporaneously herewith.

any such . . . assignment," provided that certain conditions are met. (Ex. 1 § 22.2.) These provisions of the Leases do not allow Frontier to withhold consent or cooperation in order to perfect its interests in another litigation, to which Frontier is not entitled. Yet this is exactly what Frontier has done, significantly harming Plaintiffs.

## II.   THE PENDING LITIGATIONS

As the Court knows, certain Plaintiffs in this action have been involved in other recent litigation against Frontier. The first pending lawsuit, filed by Frontier on November 18, 2020, concerns a completely unrelated Framework Agreement entered into by and between Frontier and AMCK Aviation Holdings Ireland Ltd. ("AMCK Holdings"), which is not a party to this action and is not related to any of the parties in this action. *See Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd. et al.*, No. 1:20-cv-09713 (LLS) (S.D.N.Y.) ("Litigation 1"); (*see also* Compl. ¶¶ 36-37). On July 6, 2023, Judge Stanton, who presides over Litigation 1, largely granted summary judgment against Frontier, dismissing all but one of its claims and the bulk of its legal theories—including Frontier's claims for breach of the Leases. (*See* Opinion and Order at 34-35, Litig. 1 (July 6, 2023), ECF No. 123.) The only claim remaining for trial in Litigation 1 is the claim for breach of contract arising from AMCK Holdings' express termination of the Framework Agreement on May 8, 2020. (*Id.*)

A year and a half later, Frontier filed another litigation against AMCK Holdings and several Plaintiffs, captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd. et al.*, No. 1:22-cv-02943 (PAE) (S.D.N.Y.) ("Litigation 2"). The series of transactions at issue in Litigation 2 (collectively, the "Carlyle/CK Transaction") effectuated a transfer of the shares in the indirect parents of certain aircraft leasing entities from AMCK Holdings and its ultimate parent, CK Asset Holdings Limited, to Maverick. (*See* Compl. ¶¶ 39-43.) Frontier's claims in Litigation 2 were based on, among other things, an alleged lack of notice to Frontier regarding these transactions.

4

Plaintiffs filed the instant action on June 6, 2023 ("Litigation 3", and together with Litigation 1 and Litigation 2, the "Litigations"). Litigation 3 concerns the Sale/Financing Transactions for ten Aircraft, which CAML sought to effectuate in its capacity as Servicer of the Aircraft and Leases. By refusing to cooperate with CAML and acting unreasonably in connection with the sale and refinancing activities in connection with the Leases, Frontier breached its contractual obligations to Plaintiffs, under both the Leases and the Non-Waiver and Preservation of Rights Agreement—an agreement requested by Frontier and designed to facilitate continued cooperation in ordinary course business activity despite the pendency of Litigations 1 and 2—entered into by Frontier and CAML on October 21, 2022 (the "Cooperation Agreement"). (*See* Compl. ¶¶ 50-52.)

## III. FRONTIER'S COUNTERCLAIMS

On July 26, 2023, Frontier filed its answer to Plaintiffs' Complaint, as well as several counterclaims, including claims for breach of contract with respect to the Leases and Participation Agreement, breach of quiet enjoyment under the Leases and Participation Agreement, and constructive trust over the Aircraft. (ECF No. 18, the "Answer & Counterclaims".) For the reasons set forth below, Frontier's counterclaims should be dismissed.

## **ARGUMENT**

### I. APPLICABLE STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. Town of*

*Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, however, dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).[5]

## II. FRONTIER'S FIRST CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Under New York law,[6] to allege a claim for breach of contract, a party must show (1) the existence of a contract between the parties, (2) performance by the party seeking recovery, (3) breach or failure to perform by the other party, and (4) damages. *See, e.g.*, *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). Frontier's breach of contract counterclaim is deficient because it fails to allege a breach by Plaintiffs. Moreover, Frontier's assertion that the alleged breach of contract is the purported "harm [to] Frontier's ability to recover on a judgment in [Litigation 1]" constitutes impermissible claim-splitting because it duplicates Frontier's only live claim in Litigation 2. This attempt to litigate the same claims in multiple actions contravenes the goals of judicial economy and wastes both the Court's and Plaintiffs' time. Frontier's first counterclaim should be dismissed.

### A. Frontier's Claim Is Based on an Alleged Failure to Provide "Reasonable Assurances," But There Is No Such Obligation Under the Leases or the Participation Agreement.

Frontier alleges in its first counterclaim that Plaintiffs breached their contractual obligations under the Leases and Participation Agreement by failing to provide Frontier "with reasonable assurances in connection with the sale of four of the Aircraft that such sale will not

---

[5] Unless otherwise stated, internal citations and quotation marks are omitted throughout.

[6] The Leases and Participation Agreement are governed by the laws of New York. (*See* Ex. 3 § 20.14; Ex. 1 § 25.1; Ex. 2 § 4.1 (incorporating by reference § 25.1 of Lease Form 2).)

6

restrict or otherwise diminish Frontier's rights and interests under the Leases and its use the Aircraft, or harm Frontier's ability to recover on a judgment in [Litigation 1]." (Answer & Counterclaims ¶ 76.) This claim should be dismissed because neither the Leases nor the Participation Agreement require Plaintiffs to provide Frontier with such "reasonable assurances."

Under New York law, courts will not impose obligations on the contracting parties that are not contemplated by or beyond the four corners of the relevant agreement. It is well-established that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing," and accordingly, an unambiguous contract "must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002). In addition, "where an agreement is negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 518-19 (2017) (alteration). By Frontier's own admission, it is a sophisticated player in the airline leasing market. If Frontier wished to include a "reasonable assurances" requirement in the Leases, it could have negotiated to do so. But it did not, and there is no basis for the Court to impose such an obligation on Plaintiffs where it does not exist.

Moreover, the Leases and Participation Agreement each contain clauses stipulating that the agreement constitutes the "sole" or "entire agreement." (*See* Ex. 3 § 20.11 ("Lessee's Documents constitute the entire agreement between the parties hereto in relation to the leasing of the Aircraft by Lessor to Lessee, and supersede all previous proposals, agreements and other written and oral communications in relation thereto."); Ex. 1 § 23.7 ("This Agreement, together with the other Operative Documents, is the sole and entire agreement between the Lessor and Lessee in relation

7

to the leasing of the Aircraft and supersedes all previous agreements in relation to that leasing."); Ex. 2 § 4.1 (incorporating by reference Lease Form 2 § 23.7).) The plain intent of the parties in including such clauses was to cabin any purported rights and obligations created by the agreements only to those that are provided for within the documents' four corners.

The Leases contain specific recitations of the obligations of the parties to those agreements. Nothing in the provisions cited by Frontier—nor any other provision—requires any Plaintiff to provide the "reasonable assurances" to which Frontier claims it is entitled. The Leases merely state that (1) a transfer of Aircraft by the Lessor or Owner Participant "shall not result in any restriction . . . on Lessee's rights under this Agreement . . . or on Lessee's use or operation of the Aircraft" (*see* Ex. 3 § 20.2(a)(ii)) and (2) that "none of Lessee's rights and benefits in respect [of the Aircraft] shall be diminished as a result of any such Security Interest or assignment" that Frontier is otherwise obligated to consent to. (Ex. 1 § 22.2(3).) The Participation Agreement likewise contains specific recitations of the obligations of the parties to those agreements, including that the "Owner Participant shall not permit any person . . . to[] interfere with Lessee's rights under the Lease . . . to the continued quiet use, possession, and enjoyment of the Aircraft during the Lease Period." (Ex 2 § 2.1(b)(4).) Nothing in these provisions cited by Frontier—nor any other provision of the relevant agreements—requires any Plaintiff to provide the "reasonable assurances" to which Frontier claims it is entitled.

> **B.     Frontier's Claim Based on Alleged "Harm [to] Frontier's Ability to Recover on a Judgment in [Litigation 1]" Is Impermissible Claim-Splitting.**

Frontier's breach of contract counterclaim should be dismissed for the additional reason that it is duplicative of Frontier's only remaining claim in Litigation 2. Frontier has no right to maintain two actions on the same subject, in the same court, and against the same parties, at the same time—this contravenes the rule against duplicative litigation, or claim splitting. *See In re*

8

*Approximately $3.5 Billion of Assets on Deposit at the Fed. Reserve Bank of N.Y. in the Name of Da Afg. Bank*, No. 22-03228 (GBD), 2022 WL 1239657, at *1 (S.D.N.Y. Apr. 27, 2022) ("A plaintiff cannot bring two of the same suits that are both still pending, because a plaintiff has no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."); *see also Salib v. I.C. Sys., Inc.*, No. 01-01083 (JCH), 2002 WL 31060368, at *2 (D. Conn. July 24, 2002) ("If claim splitting is involved, simple dismissal . . . is appropriate because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."); *Dworkin Constr. Corp. (USA) v. Marcus Grp. Inc.*, No. 656522/2022, 2023 WL 4697054, at *2 (Sup. Ct. N.Y. Cnty. Apr. 7, 2023) (dismissing a claim for breach of contract pursuant to the claim splitting doctrine because "the challenged claim raised in the second action is based upon the same liability in the prior action, and . . . that the claim was ascertainable when the prior action was commenced").

In Litigation 2, Frontier's remaining claim centers around an alleged failure to comply with the same contractual provisions at issue here, and arises from the same set of facts, including an alleged lack of notice with respect to the Carlyle/CK Transaction. Therefore, Frontier's breach of contract counterclaim in this action should be dismissed, to the extent it is alleging that the lack of notice of the Carlyle/CK Transaction could impact its ability to recover a judgment in a pending litigation.

### III. FRONTIER FAILS TO ALLEGE ANY BREACH OF QUIET ENJOYMENT BY ANY PARTY TO THE LEASES OR THE PARTICIPATION AGREEMENT

In Frontier's second counterclaim, it alleges that Plaintiffs violated its "quiet enjoyment rights to its leasehold interests" by issuing the notices of default, served on May 26, 2023 (the "<u>Default Notices</u>"). (Answer & Counterclaims ¶ 86.) But Frontier fails to make the requisite showing for a claim of breach of quiet enjoyment under New York law. Under New York law,

"[i]n actions for damages for breach of the covenant of quiet enjoyment, a tenant . . . must show an ouster, or if the eviction is constructive, an abandonment of the premises." *TDS Leasing, LLC v. Tradito*, 148 A.D.3d 1079, 1080 (2d Dep't 2017). Frontier has not been ousted from its possession of the Aircraft, nor has it abandoned the Aircraft. In fact, Frontier continues to use the Aircraft with impunity despite its continued breaches of its obligations under the Leases and Cooperation Agreement.[7] The Default Notices merely notified Frontier of their breaches and reminded Frontier of remedies that the Lessors may exercise in the future pursuant to the express terms of the Leases. But Plaintiffs have not taken any action to deprive Frontier of its use or enjoyment of the Aircraft.

## IV. FRONTIER'S FIRST AND SECOND COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE DAMAGES

### A. Dismissal Is Appropriate When a Party Fails to Plead the Damages Element of a Claim.

Frontier's first two counterclaims should be dismissed for the additional reason that they fail to allege any monetary damages specifically resulting from Plaintiffs' alleged breaches. Under New York law, a party asserting a breach of contract claim "must allege facts showing damage caused by the alleged breach." *Bernstein v. O'Reilly*, No. 17-cv-9483 (DAB), 2019 WL 10995111, at *6-7 (S.D.N.Y. Mar. 5, 2019) (dismissing plaintiff's breach of contract claim where plaintiff "fail[ed] to explain how her losses were caused by and are directly traceable to the alleged breach of contract"); *Macquarie Rotorcraft Leasing Holdings Ltd. v. LCI Helicopters (Ireland) Ltd. (In*

---

[7] By arguing that CAML's issuance of the Default Notices somehow disturbs Frontier's right of quiet enjoyment under the Leases, Frontier continues to distort the issues and overstate the purported "harm" that it could suffer if Plaintiffs do so much as attempt to exercise their contractually bargained for remedies. This argument is simply a repackaging of Frontier's arguments in favor of preliminary injunction in Litigation 2, which similarly contravened the reality that Frontier's use and enjoyment of the Aircraft remains undisturbed.

*re Waypoint Leasing Holdings Ltd.)*, 607 B.R. 143, 153 (Bankr. S.D.N.Y. 2019) (holding that a complaint that fails to demonstrate how an alleged breach caused damage to the plaintiff is "fatally deficient"). Without such "clear demonstration of damages, there can be no claim for breach of the contract." *Milan Music, Inc. v. Emmel Commc'ns Booking, Inc.*, 37 A.D.3d 206, 206 (1st Dep't 2007).

The only monetary amounts sought by Frontier's first two counterclaims are "$250,000 in attorneys' fees," which are not tied in any way to any purported breach. Frontier makes vague and conclusory assertions of "harm to its operations and damage to reputation and standing," but makes no attempt to place a dollar value on that purported "harm" and fails to explain what harm to Frontier's operations or reputation when it continues to operate the Aircraft exactly as it did before. (Answer & Counterclaims ¶¶ 77, 87.) Moreover, even if Frontier *had* adequately pled damages here, those damages would be duplicative of those sought by Frontier in connection with its breach of contract claim in Litigation 2. Because Frontier has failed to allege damages, its contract-based claims should be dismissed.

V. **FRONTIER'S FIRST AND SECOND COUNTERCLAIMS SHOULD BE DISMISSED AS TO PLAINTIFFS THAT ARE NOT PARTIES TO THE RELEVANT AGREEMENTS**

Under New York law, a breach of contract claim must be dismissed where the defendant is a non-party to the agreement in question because one must be a party to a contract in order to breach it. *See Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963, 965 (2d Dep't 2019) ("One cannot be held liable under a contract to which he or she is not a party."); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) ("It is well established that, generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract."). Frontier's first two counterclaims allege breaches of provisions in the Leases and in the Participation Agreement. However, Plaintiffs CAML, Accipiter, Vermillion, Accipiter

11

Holdings, Vermillion Holdings, Maverick, and Manchester are not parties to any of the Leases. Therefore, Frontier's counterclaims against these Plaintiffs must be dismissed.

Similarly, Plaintiffs CAML, Vermillion, Accipiter Holdings, Vermillion Holdings, Maverick, Manchester, and UMB are not parties to the Participation Agreement. Thus, Defendant's counterclaims arising from any purported breach of the Participation Agreement should be dismissed as to those Plaintiffs.

## VI. FRONTIER'S THIRD COUNTERCLAIM FOR CONSTRUCTIVE TRUST MUST BE DISMISSED

As an initial matter, Frontier's third counterclaim for a constructive trust under the Leases arises solely out of Frontier's fraudulent transfer claims in Litigation 2. Those claims have already been dismissed in that action. Therefore, Frontier is precluded from bringing such a duplicative claim in this litigation and such claim must be dismissed. *See infra* Section VI.C.; *Mamot v. Cuomo*, No. 21-6732 (LTS), 2021 WL 5166365, at *2 (S.D.N.Y. Nov. 5, 2021).

Moreover, under New York law, a party must establish "four elements before a constructive trust may be imposed: (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257-58 (S.D.N.Y. 2002). Frontier does not—and cannot—satisfy these requirements.

### A. Frontier Fails to Allege a Fiduciary Relationship Between Itself and the Lessor Plaintiffs.

First, Frontier cannot establish a fiduciary relationship between Frontier and the Lessor Plaintiffs. Under New York law, a fiduciary relationship "may arise where the parties to a contract specifically agree to such a relationship, or if one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, No. 13-5193 (SAS),

2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014). Frontier has not shown that such a relationship of trust and confidence, *i.e.*, a fiduciary relationship, exists.

Frontier makes the conclusory allegation that Frontier and Plaintiffs, as parties to the Leases, "have a confidential relationship due to their alleged respective interests in the Aircraft, which requires a special and unusual degree of trust between Frontier and the [Plaintiffs]." (Answer & Counterclaims ¶ 90.) However, as established above, only the Lessor Plaintiffs are parties to the Leases.[8] The mere fact that both Frontier and the Lessor Plaintiffs each have "interests" in the Aircraft by no means gives rise to "a special and unusual degree of trust" between them. Nor does Frontier plead any facts suggesting that the Lessor Plaintiffs have superior access to confidential information that somehow puts them in a superior position to Frontier or requires Frontier to repose trust and confidence in the Lessor Plaintiffs. *See Russell Publ'g Grp.,* 2014 WL 1329144, at *3. Therefore, Frontier has not adequately alleged the existence of a special relationship, and its "mere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship." *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 722 F. App'x 12, 15 (2d Cir. 2018).

In reality, Frontier and the Lessor Plaintiffs are merely parties to an arm's length business relationship. When parties deal at arm's length in a commercial transaction, "no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *See Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 355 F. App'x 516, 519 (2d Cir. 2009); *see also Flat-Marks Realty Corp. v. Silver's Lunch Stores, Inc.*, 74 F.2d 210, 211 (2d Cir. 1934) (explaining that a lessor-lessee relationship, without

---

[8] Frontier cannot make such allegation against Plaintiffs-Counterclaim Defendants CAML, Accipiter, Vermillion, Accipiter Holdings, Maverick, and Manchester.

more, is merely contractual); *1101-43 Ave Acquisition LLC v. Rockstar Hotels LLC, Inc.*, No. 653729/2019, 2020 WL 1972239, at *3 (Sup. Ct. N.Y. Cnty. Apr. 24, 2020) (holding that the lease at issue "outlines core responsibilities consistent with a relationship between a lessor and lessee and is bereft of any provisions that create a fiduciary duty"). No such special circumstances exist here. Accordingly, Frontier's allegations are insufficient to establish the requisite fiduciary relationship needed to impose a constructive trust.

### B. There Has Been No Transfer in Reliance on a Promise.

Frontier misinterprets New York law on constructive trusts and wrongly attempts to distract the Court with allegations about the Carlyle/CK Transaction. A constructive trust applies where the party seeking the constructive trust has relied on a certain promise, and there is a transfer of the property in question that affects ***that party's interest*** in such property. *See, e.g.*, *Bontecou v. Goldman*, 103 A.D.2d 732, 733 (2d Dep't 1984) ("In order to establish that there was a transfer in reliance on the promise, it must be shown that the party seeking to impose the constructive trust had some interest in the property prior to obtaining the promise that the property would be conveyed, and that this interest was parted with in reliance on the promise."). Here, however, Frontier's leasehold interest in the Aircraft is precisely the same now as it was prior to the Carlyle/CK Transaction. The same exact Leases are still in place with the same parties, and Frontier's interests are undiminished. Moreover, a constructive trust is not an appropriate remedy where, as here, a written agreement governs the relationship between the parties. *See Superintendent of Ins. v. Ochs* (*In re First Central Fin. Corp.*), 377 F.3d 209, 213-18 (2d Cir. 2004) (holding that the existence of a written agreement governing the relationship between the parties precludes a finding of unjust enrichment and, therefore, the court affirmed the district court's decision not to impose a constructive trust).

### C.  Plaintiffs Were Not Unjustly Enriched.

Lastly, contrary to Frontier's unsubstantiated assertions, Plaintiffs were not unjustly enriched as a result of the Carlyle/CK Transaction. Frontier offers no factual support for the allegation that the Carlyle/CK Transaction was "structured so as to avoid having to pay Frontier for damages arising out of [Litigation 1]." This claim rings especially hollow in light of the ***multiple*** guaranty offers CAML has made to Frontier for that same judgment ***despite having no obligation to do so***. Frontier's conclusory allegations, without sufficient factual support, "fail to establish that [Plaintiffs were] unjustly enriched at the expense of" Frontier and therefore "warrant dismissal." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 183 (2011); *see also Safe Step Walk In Tub Co. v. CKH Indus., Inc.*, No. 15-7543 (NSR), 2018 WL 4539656, at *7 (S.D.N.Y. Sept. 20, 2018) (dismissing defendant's unjust enrichment counterclaim because a "conclusory statement" that plaintiff was unjustly enriched is "insufficient to state a facially plausible unjust enrichment counterclaim.").

Moreover, to the extent that these allegations constitute an attempt by Frontier to reframe and relitigate the fraudulent transfer claims in Litigation 2, those claims have already been dismissed in that action and Frontier is precluded from bringing a duplicative claim in this litigation. *See Mamot*, 2021 WL 5166365, at *2 ("The doctrine of claim preclusion, also known as *res judicata*, bars a plaintiff from relitigating claims against a defendant that it lost in a previous action against the same defendant and claims that the plaintiff could have brought in that earlier action but did not."). As such, Frontier's third counterclaim must be dismissed.

### CONCLUSION

For the reasons set forth herein, Plaintiffs' motion to dismiss should be granted and Frontier's counterclaims should be dismissed.

| | |
|---|---|
| Dated: August 16, 2023<br>New York, New York | **MILBANK LLP**<br><br>/s/ *Jed M. Schwartz*<br><br>Jed M. Schwartz<br>Samantha A. Lovin<br>Emily Werkmann<br>55 Hudson Yards<br>New York, New York 10001<br>Tel: (212) 530-5000<br>JSchwartz@milbank.com<br>SLovin@milbank.com<br>EWerkmann@milbank.com<br><br>*Counsel for Plaintiffs-Counterclaim Defendants* |