**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CARLYLE AVIATION MANAGEMENT
LIMITED, ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED, VERMILLION
AVIATION (TWO) LIMITED, ACCIPITER
HOLDINGS DAC, MAVERICK AVIATION
HOLDINGS LTD., MANCHESTER
AVIATION FINANCE S.à r.l., WELLS
FARGO TRUST COMPANY, N.A., not in its
individual capacity but solely in its capacity as
OWNER TRUSTEE, UMB BANK, N.A., not in
its individual capacity but solely in its capacity
as OWNER TRUSTEE,

                    Plaintiffs,

v.

FRONTIER AIRLINES, INC.

                    Defendant.

Case No.: 1:23-cv-04774 (PAE)

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................................... 3

I.      The Leases, the Participation Agreement, the Guarantees, and the Parties ....................... 3

II.     The Pending Litigations ...................................................................................................... 6

III.    Frontier's Counterclaim ...................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

I.      Applicable Standard ............................................................................................................ 8

II.     Frontier's Claim for Breach of Contract Should Be Dismissed for Failure to State a
        Claim ................................................................................................................................... 8

        A.      Frontier's Breach of Contract Claim Premised on an Alleged Failure to
                Provide "Reasonable Assurances" that the Sale/Financing Transactions
                Would Not Restrict Frontier's Leasehold Rights and Interests or Frontier's
                Ability to Recover on a Potential Future Judgment in a Separate Litigation
                Fails Because There Is No Such Obligation Under the Contracts. ......................... 9

        B.      Frontier Fails to Allege Breach of Quiet Enjoyment by Any Party to the
                Leases, the Participation Agreement, or the Guarantees ..................................... 10

        C.      Frontier Fails to Allege Breach of Contract with Respect to the
                Reimbursement of Legal Fees and Expenses........................................................ 12

III.    Frontier's Counterclaim Should Be Dismissed as to Plaintiffs That Are Not Parties
        to the Relevant Agreements ............................................................................................. 15

CONCLUSION....................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Approximately $3.5 Billion of Assets on Deposit at the Fed. Reserve Bank of
N.Y. in the Name of Da Afg. Bank*,
No. 22-03228 (GBD), 2022 WL 1239657 (S.D.N.Y. Apr. 27, 2022) ....................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................8

*Austin v. Town of Farmington*,
826 F.3d 622 (2d Cir. 2016)..............................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................8

*Edwards v. Sequoia Fund, Inc.*,
938 F.3d 8 (2d Cir. 2019) ..................................................................................................8

*MBIA Ins. Corp. v. Royal Bank of Canada*,
706 F. Supp. 2d 380 (S.D.N.Y. 2009)..............................................................................15

*Salib v. I.C. Sys., Inc.*,
No. 01-01083 (JCH), 2002 WL 31060368 (D. Conn. July 24, 2002) ....................................9

*Starr v. Sony BMG Music Entm't*,
592 F.3d 314 (2d Cir. 2010)..............................................................................................8

*TDS Leasing, LLC v. Tradito*,
148 A.D.3d 1079 (2d Dep't 2017) ...................................................................................11

*Valtus Cap. Grp., LLC v. Parq Equity Ltd. P'ship*,
2019 WL 5067179 (S.D.N.Y. Oct. 9, 2019)......................................................................15

*Victory State Bank v. EMBA Hylan, LLC*,
169 A.D.3d 963 (2d Dep't 2019) ......................................................................................15

**Other Authorities**

Fed. R. Civ. 12(b)(6)............................................................................................................8

Plaintiffs-Counterclaim Defendants Carlyle Aviation Management Limited ("CAML"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.à r.l. ("Manchester"), UMB Bank, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("UMB Trustee"), and Wells Fargo Trust Company, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("WF Trustee") (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their Motion to Dismiss the Amended Counterclaim filed by Defendant-Counterclaim Plaintiff Frontier Airlines, Inc. ("Frontier").

## PRELIMINARY STATEMENT

This litigation arises from Frontier's refusal to honor its contractual obligations under (i) fourteen leases, and (ii) another agreement, both of which require Frontier to cooperate in good faith with Plaintiffs throughout the course of the parties' ongoing business relationship. As detailed in the Complaint (Notice of Removal Ex. B, ECF No. 1-2),[1] Plaintiffs made repeated requests for Frontier's cooperation in connection with prospective sales and refinancings of Aircraft (defined below) that Frontier leases from certain Plaintiffs (the "Sale/Financing Transactions"). Specifically, Plaintiffs sought Frontier's cooperation with certain security assignments and lease assignments, which are industry-standard, routine requests that have no impact on Frontier's use or interest in those Aircraft. As alleged in the Complaint, Frontier refused to cooperate, obstructing Plaintiffs' business and ultimately costing Plaintiffs the sales of the Aircraft. It was Frontier's improper actions that forced Plaintiffs to commence this Action.

---

[1] All capitalized terms not defined herein shall adopt their definitions found in the Complaint.

Apparently believing that the "best defense is a good offense," Frontier has asserted a counterclaim against Plaintiffs claiming that Plaintiffs have breached various contracts in several respects. But Frontier's offense is not good; its claims are faulty and fail on multiple grounds.

*First*, Frontier's breach of contract claim is premised on the flawed notion that Plaintiffs were obligated under the relevant contracts to provide Frontier with "reasonable assurances" that the Sale/Financing Transactions would not restrict or diminish Frontier's rights under the Leases. In reality, neither the Leases nor any other applicable agreement imposes such an obligation. Moreover, Frontier does not—and indeed, cannot—plead any facts showing that the Sale/Financing Transactions would result in the restriction or diminution of Frontier's leasehold rights and interests in the aircraft it leases from certain Plaintiffs. Accordingly, this claim must be dismissed because Frontier has failed to plead both a contractual obligation and facts showing that Plaintiffs breached any contractual obligation.

*Second*, Frontier points to language in various agreements that give Frontier a right to the use and quiet enjoyment of the Aircraft. Frontier then claims that Plaintiffs violated those rights when they issued default notices because of Frontier's serial and ongoing breaches of the Leases. But Frontier does not—and, again, cannot—plead any facts showing that the issuance of the default notices in any way disturbed Frontier's use or enjoyment of the Aircraft. To the contrary, Frontier has continued to possess and operate the Aircraft without interruption since the notices were issued, demonstrating that there has been no breach of quiet enjoyment under New York law. Accordingly, Frontier's breach of contract claim premised on breaches of these provisions also fails.

*Third*, Frontier alleges that Plaintiffs have breached contractual obligations to reimburse Frontier for certain costs. Specifically, Frontier alleges that Plaintiffs "have refused to reimburse"

Frontier for certain fees and expenses. (Am. Answer & Countercl "<u>Amended Counterclaim</u>" or "<u>CC</u>") ¶ 2., ECF No. 30) But that is a blatant falsehood, as the email below makes clear:[2]



In any event, the plain language of the relevant agreements makes clear that they do not require reimbursement of the fees sought by Frontier.

*Lastly*, Frontier's claim fails against certain Plaintiffs because those Plaintiffs are not party to the relevant contracts.

## FACTUAL ALLEGATIONS

## I.     THE LEASES, THE PARTICIPATION AGREEMENT, THE GUARANTEES, AND THE PARTIES

UMB Trustee and WF Trustee, not in their individual capacities but solely in their capacities as Owner Trustees, lease fourteen aircraft (the "<u>Aircraft</u>") to Frontier. Those leases are governed by fourteen separate lease agreements (the "<u>Leases</u>"). Plaintiffs Accipiter and Vermillion are the beneficial owners, or Owner Participants of the Aircraft. CAML acts as "Servicer" of the Leases, and manages the sale, leasing, and financing of the Aircraft.

---

[2] Frontier never agreed to the meeting requested by Plaintiffs' counsel. (*See* Ex. 5.) Unless otherwise specified, "Ex. __" refers to exhibits to the Declaration of Jed M. Schwartz, filed contemporaneously herewith.

Thirteen Leases—including the Leases for the ten Aircraft at issue in the Complaint—contain substantially similar terms and are in the same format ("Lease Form 1")[3] while one Lease contains slightly different terms and format ("Lease Form 2").[4]

Lease Form 1 contains certain provisions related to the transfer of Aircraft.  As relevant here, Lease Form 1 provides, in part:

> Each of Lessor and Owner Participant . . . shall have the right at any time, at its own expense and upon prior written notice to Lessee, to transfer ownership or beneficial ownership, as applicable, of the Aircraft, or to assign (including to assign as security), mortgage, novate, transfer, grant participations in, or otherwise dispose of its rights and obligations under this Agreement and the other Operative Documents, to any other person by outright transfer or assignment or collateral assignment or by operation of law and Lessee hereby consents to any such transfer or assignment; provided that:
>
> (ii) such transfer shall not result in any restriction, based on the facts and circumstances existing and applicable laws in effect at the time of such transfer, on Lessee's rights under this Agreement or the other Lessee's Documents or on Lessee's use or operation of the Aircraft . . . .

Section 22.3 of Lease Form 2 contains a similar transfer provision allowing the Lessor to "sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent," provided certain conditions are met.  (Ex. 1 § 22.3.)

The Leases also contain specific provisions regarding the payment of certain expenses. Section 20.2(a)(v) of Lease Form 1 states that "Lessor shall have reimbursed (or shall have agreed in writing to promptly reimburse . . . )" Lessee's "*reasonable* and invoiced out-of-pocket costs and expenses incurred *in connection with its cooperation* with Lessor under this Clause 20.2(a), including *reasonable* legal fees."  (Ex. 3 § 20.2(a)(v)) (emphasis added).)  Section 22.2 of Lease

---

[3] Those thirteen Leases relying on Lease Form 1 are for the aircraft bearing the following manufacturer's serial numbers: 8102, 8239, 8357, 8307, 8402, 8766, 8857, 8913, 8977, 9026, 9068, 9177, and 10038.

[4] The one Lease relying on Lease Form 2 is for the aircraft bearing the following manufacturer's serial number: 7524.

Form 2 provides that "Lessor shall pay all ***reasonable*** and documented out-of-pocket costs and expenses, including ***reasonable*** fees and disbursements of counsel, ***incurred by Lessee in connection with any such Security Interest or Assignment***."  (Ex. 1 § 22.2 (emphasis added).)

In connection with Lease Form 2, Plaintiff Accipiter (the Owner Participant for that Lease) also entered into a participation agreement with Frontier relating to that Lease (the "<u>Participation Agreement</u>").  The Participation Agreement provides that Accipiter may transfer "all or any of its rights" under the Lease and other contracts in certain circumstances, and that Accipiter "shall be responsible for Lessee's ***reasonable*** legal fees and other reasonable costs and expenses incurred ***in respect of such OP Transfer*** and shall pay such costs and expenses promptly upon demand therefor."  (Ex. 2 § 3.1(a)(2) (emphasis added).)

The obligations to Frontier under each Lease of each respective Owner Trustee, as Lessor under such Lease, are guaranteed by either the relevant Owner Participant (Accipiter and Vermillion), or Accipiter Holdings (collectively, the "<u>Guarantors</u>") pursuant to a related Guaranty (collectively, the "<u>Guarantees</u>").  Each Guaranty requires the Guarantor to guarantee the payment and performance of all obligations of the Lessor under the Leases, should the Lessor fail to perform.  Relatedly, each Guarantor "agrees to be liable for the payment of all reasonable fees and expenses, including attorney's fees, ***incurred by Lessee in connection with the enforcement of this Guaranty***."  (Ex. 4 § 2.2 (emphasis added).)

The Leases also impose on Frontier an affirmative obligation to cooperate in the security assignment or transfer of the Leases.  The relevant Lease Form 1 cooperation provisions are outlined in the Complaint.  (Compl. ¶¶ 32-33.)  Lease Form 2, in similar fashion, requires Frontier to "promptly execute (or cause to be executed) all documents reasonably requested by Lessor to effect, perfect, record or implement" certain assignments, and to "comply with any other

reasonable requests of Lessor, its successors and assigns in respect of any such . . . assignment," provided that certain conditions are met.  (Ex. 1 § 22.2.)  These provisions of the Leases do not allow Frontier to withhold consent or cooperation in order to perfect its interests in another litigation.  Yet this is exactly what Frontier has done, significantly harming Plaintiffs.

## II.    THE PENDING LITIGATIONS

As the Court knows, certain Plaintiffs in this action have been involved in other recent litigation against Frontier.  The first pending lawsuit, filed by Frontier on November 18, 2020, concerns a completely unrelated Framework Agreement entered into by and between Frontier and AMCK Aviation Holdings Ireland Ltd. ("AMCK Holdings"), which is not a party to this action and is not related to any of the parties in this action.  *See Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd.*, No. 1:20-cv-09713 (LLS) (S.D.N.Y.) ("Litigation 1"); (*see also* Compl. ¶¶ 36-37).  On July 6, 2023, Judge Stanton, who presides over Litigation 1, largely granted summary judgment against Frontier, dismissing all but one of its claims and the bulk of its legal theories—including Frontier's claims for breach of the Leases.  (*See* Op. & Order at 34-35, Litig. 1 (July 6, 2023), ECF No. 123.)  The only claim remaining for trial in Litigation 1 is the claim for breach of contract arising from AMCK Holdings' express termination of the Framework Agreement on May 8, 2020.  (*Id.*)

A year and a half later, Frontier filed another litigation against AMCK Holdings and several Plaintiffs, captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd.*, No. 1:22-cv-02943 (PAE) (S.D.N.Y.) ("Litigation 2").  The series of transactions at issue in Litigation 2 (collectively, the "Carlyle/CK Transaction") effectuated a transfer of the shares in the indirect parents of certain aircraft leasing entities from AMCK Holdings' ultimate parent, CK Asset Holdings Limited, to Maverick.  (*See* Compl. ¶¶ 39-43.)  Frontier's claims in Litigation 2 were based on, among other things, an alleged lack of notice to Frontier regarding these transactions.

Plaintiffs filed the instant action on June 6, 2023 ("Litigation 3," and together with Litigation 1 and Litigation 2, the "Litigations").

Litigation 3 concerns the Sale/Financing Transactions for ten Aircraft, which CAML sought to effectuate in its capacity as Servicer of the Aircraft and Leases. By refusing to cooperate with CAML and acting unreasonably in connection with the sale and refinancing activities in connection with the Leases, Frontier breached its contractual obligations to Plaintiffs, under both the Leases and the Non-Waiver and Preservation of Rights Agreement—an agreement requested by Frontier and designed to facilitate continued cooperation in ordinary course business activity despite the pendency of Litigations 1 and 2—entered into by Frontier and CAML on October 21, 2022 (the "Cooperation Agreement"). (*See* Compl. ¶¶ 50-52.)

## III. FRONTIER'S COUNTERCLAIM

On July 26, 2023, Frontier filed its answer to Plaintiffs' Complaint, as well as several counterclaims, including breach of contract with respect to the Leases and Participation Agreement, breach of quiet enjoyment under the Leases and Participation Agreement, and constructive trust over the Aircraft. (ECF No. 18, the "Answer & Counterclaims.") Plaintiffs filed a motion to dismiss on August 16, 2023. On August 17, 2023, this Court instructed Frontier to either serve any opposition to Plaintiffs' motion to dismiss or amend its counterclaims. (*See* August 17, 2023 Order, ECF No. 27.) Accordingly, on September 6, 2023, Frontier filed an amended answer to Plaintiffs' Complaint in this action, as well as a counterclaim for breach of contract with respect to the Leases, Participation Agreement, and Guarantees. (*See generally* ECF No. 30). For the reasons set forth below, Frontier's counterclaim, as amended, should be dismissed.

## ARGUMENT

### I.    APPLICABLE STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, however, dismissal is appropriate." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).[5]

### II.    FRONTIER'S CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Under New York law,[6] to allege a claim for breach of contract, a party must show (1) the existence of a contract between the parties, (2) performance by the party seeking recovery, (3) breach or failure to perform by the other party, and (4) damages. *See, e.g.*, *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).  Frontier's breach of contract counterclaim should be dismissed in its entirety because it fails to allege a breach of any obligation by any of the Plaintiffs.

---

[5] Unless otherwise stated, internal citations and quotation marks are omitted throughout.

[6] The Leases, Participation Agreement, and Guarantees are governed by the laws of New York. (*See* Ex. 3 § 20.14; Ex. 1 § 25.1; Ex. 2 § 4.1 (incorporating by reference § 25.1 of Lease Form 2); Ex. 4 § 2.4.)

Indeed, some of the Plaintiffs are not even party to any of the allegedly breached contracts, necessitating their dismissal on that ground as well.

A.    **Frontier's Breach of Contract Claim Premised on an Alleged Failure to Provide "Reasonable Assurances" that the Sale/Financing Transactions Would Not Restrict Frontier's Leasehold Rights and Interests or Frontier's Ability to Recover on a Potential Future Judgment in a Separate Litigation Fails Because There Is No Such Obligation Under the Contracts.**

According to Frontier, Plaintiffs breached Section 20.2(a) of Lease Form 1, and Section 22.3(v) of Lease Form 2 when Plaintiffs did not provide Frontier "with reasonable and required assurances in connection with [Plaintiffs'] demand that Frontier execute certain assignments and sale transaction documents commencing in November 2022 that such transactions would not restrict or otherwise diminish Frontier's rights and interests under the Leases and its use [of] the Aircraft, or harm Frontier's ability to recover on a judgment in [Litigation 1]."  (CC ¶ 92.)[7]  But none of the provisions to which Frontier cites impose any such obligation on Plaintiffs.  Rather, the provisions at issue simply set out the conditions on which Frontier's pre-approval of a transfer already has been granted.

---

[7] To the extent that Frontier's breach of contract claim is based on an alleged harm regarding "Frontier's ability to recover on a judgment" in Litigation 1, that portion should be dismissed on the additional ground that it is impermissible "claim-splitting."  In Litigation 2, Frontier's remaining claim centers around an alleged failure to comply with the same contractual provisions at issue here, and arises from the same set of facts, including an alleged lack of notice with respect to the Carlyle/CK Transaction.  Frontier has no right to maintain the same claim here because it contravenes the rule against duplicative litigation, or claim splitting.  *See, e.g., In re Approximately $3.5 Billion of Assets on Deposit at the Fed. Reserve Bank of N.Y. in the Name of Da Afg. Bank*, No. 22-03228 (GBD), 2022 WL 1239657, at *1 (S.D.N.Y. Apr. 27, 2022) ("A plaintiff cannot bring two of the same suits that are both still pending, because a plaintiff has no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."); *see also Salib v. I.C. Sys., Inc.*, No. 01-01083 (JCH), 2002 WL 31060368, at *2 (D. Conn. July 24, 2002) ("If claim splitting is involved, simple dismissal . . . is… appropriate because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.").

For example, Section 20.2(a)(ii) of Lease Form 1 states that Frontier is not deemed to have consented to a transaction if it would "result in any restriction, based on the facts and circumstances existing . . . on Lessee's rights under the Agreement or the other Lessee's Documents..."  (Ex. 3 § 20.2(a)(ii).)   But this provision does not obligate Plaintiffs to do anything with respect to providing assurances to Frontier that the Sale/Financing Transactions will not diminish Frontier's leasehold rights and interests.  Likewise, Section 22.3 of Lease Form 2 provides that a transfer of the relevant aircraft "will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer) . . . . "  Again, this provision imposes no obligation on Plaintiffs to provide Frontier with "reasonable assurances" of anything.  Without a contractual obligation, there can be no breach.[8]

 In any event, Frontier has not alleged any facts showing that the Sale/Financing Transactions—the only transactions relevant in this Litigation 3—would have resulted in a restriction on Lessee's rights under the Leases or the related agreements or increased any of Frontier's obligations.  Without such facts, none of which are pled, there is no claim.

**B.    Frontier Fails to Allege Breach of Quiet Enjoyment by Any Party to the Leases, the Participation Agreement, or the Guarantees.**

Frontier also alleges that Plaintiffs violated Frontier's contractual "right to quiet enjoyment" by issuing the notices of default, served on May 26, 2023 (the "<u>Default Notices</u>").  (CC ¶ 94.)  But Frontier's theory fails on multiple grounds.

---

[8] Relatedly, Frontier's claim under Section 2.1(b)(3) of the Participation Agreement—which simply requires the Owner Participant to cause the Lessor to perform all of its obligations under the Leases—is derivative of its claim for breach of the Leases.  And because there was no breach of the Leases, there is no breach of the Participation Agreement.

Under New York law, "[i]n actions for damages for breach of the covenant of quiet enjoyment, a tenant . . . must show an ouster, or if the eviction is constructive, an abandonment of the premises." *TDS Leasing, LLC v. Tradito*, 148 A.D.3d 1079, 1080 (2d Dep't 2017).  Frontier has not been ousted from its possession of the Aircraft, nor has it abandoned the Aircraft.  In fact, Frontier continues to use the Aircraft with impunity despite its continued breaches of its obligations under the Leases and Cooperation Agreement.[9]  The Default Notices merely notified Frontier of its breaches and reminded Frontier of remedies that the Lessors may exercise in the future pursuant to the express terms of the Leases.

Frontier points to the fact that Plaintiffs declined Frontier's request for an agreement not to ground, impound, and/or deregister the Aircraft.  (CC ¶ 94.)  But Plaintiffs' refusal to strip themselves of their contractually bargained for remedies by no means deprived Frontier of its use or enjoyment of the Aircraft.  And Frontier does not even attempt to claim that Plaintiffs' refusal acted as an eviction of Frontier from its possession of the Aircraft.  Nor could it.[10]

---

[9] By arguing that CAML's issuance of the Default Notices somehow disturbs Frontier's right of quiet enjoyment under the Leases, Frontier continues to distort the issues and overstate the purported "harm" that it could suffer if Plaintiffs do so much as attempt to exercise their contractually bargained for remedies.  This argument is simply a repackaging of Frontier's arguments in favor of preliminary injunction in Litigation 2, which similarly contravened the reality that Frontier's use and enjoyment of the Aircraft remains undisturbed.

[10] The Amended Counterclaim asserts one claim for breach of contract.  (CC ¶¶ 80-95.) That claim also makes passing reference to Frontier's common-law right to the quiet enjoyment of the Aircraft.  (*Id.* ¶¶ 91, 94.).  The Court should ignore this unpled theory.  In any event, that unpled theory fails for the same reasons discussed above.

**C.      Frontier Fails to Allege Breach of Contract with Respect to the Reimbursement of Legal Fees and Expenses.**

(i)      *Frontier Has Failed to Allege a Breach of Any Obligation to Pay Legal Costs.*

Frontier's counterclaim for alleged failure to pay Frontier's legal fees must be dismissed on multiple grounds.  As an initial matter, Plaintiffs have not "refused to reimburse" the legal fees Frontier alleges are due.  (CC ¶ 2.)  Within days of Frontier first providing CAML with detailed (though redacted) invoices showing its purported non-litigation legal fees and costs on August 27, 2023, Plaintiffs reimbursed Frontier on August 31, 2023—in the amount of $160,472.60, after determining that those fees were reasonably incurred within the meaning of the Leases.  (Ex. 5 (August 31, 2023 email from J. Schwartz to D. Schoeggl).)  In the same email informing Frontier of the wire transfer, Plaintiffs asked to meet and confer with Frontier in order to seek clarification and gather more information regarding the remaining approximately $130,000 in purported fees. (*Id.*)  Frontier indicated that it would propose dates for such a discussion with Plaintiffs, but never followed through.  (*Id.*)  Yet Frontier now seeks damages on the basis that Plaintiffs have outright "refused" to reimburse those fees, despite the fact that Plaintiffs explicitly stated they were not refusing to reimburse such fees.  Neither the Leases nor the Participation Agreement state a date certain by which Plaintiffs' payment of reasonable costs and fees must be made, and despite indicating that it would propose a time to discuss the fees, Frontier never followed through and has ignored Plaintiffs' good faith, reasonable request for clarification on the fees that Frontier demands.  Therefore, Frontier has not alleged a breach of contract with respect to the reimbursement of fees.

12

(ii)    *The Relevant Agreements Do Not Require Reimbursement of the Legal Fees Sought by Frontier.*

Regardless, the operative agreements do not provide for wholesale reimbursement of fees incurred by Frontier in its capacity as Lessee.  To the contrary, the reimbursement provisions in each agreement allow Frontier to be reimbursed only for a narrowly defined set of costs and expenses.  Frontier has not adequately alleged that the litigation and non-litigation fees it seeks are within the scope of reimbursable fees under the relevant agreements.

For example, Lease Form 1, which applies to thirteen of the fourteen Aircraft, only requires the reimbursement of ***reasonable*** costs and expenses that are "***incurred in connection with [Frontier's] cooperation with Lessor*** under [Section] 20.2(a)."  (Ex. 3 § 20.2(a)(v) (emphasis added).)  It is abundantly clear from the face of the agreement that Frontier's ability to collect any fees pursuant to this provision (and by extension, its ability to recover them as damages) is contingent upon *whether Frontier has cooperated with Lessor* in the effectuation of assignments or transfers contemplated by this section.  As Plaintiffs have extensively detailed in their Complaint, Frontier has repeatedly breached its cooperation obligations to effectuate those assignments and transfers under the Leases.  Plaintiffs have no obligation to reimburse Frontier for any litigation or non-litigation fees arising from Frontier's failures to cooperate, nor does Frontier have any claim for damages on such grounds.

Similarly, Lease Form 2, which applies only to one Aircraft, allows for the reimbursement of "reasonable" fees only to the extent that such reasonable fees were incurred "in connection with any such Security Interest or Assignment" contemplated by Section 22.2, or "in respect of such Transfer" contemplated by Section 22.3.  (Ex. 1 § 22.2(2), 22.3(ii).)  The assignments and transfers contemplated by those sections of the Lease are assignments and transfers that Frontier is contractually bound to cooperate in effectuating, both pursuant to the Lease itself as well as the

13

Cooperation Agreement.  Relatedly, the Participation Agreement, which applies to the same one Aircraft, only allows for reimbursement of "reasonable" fees, costs, and expenses "incurred in respect of such [Owner Participant] transfer" contemplated by that provision.  (Ex. 2 § 3.1(a)(2).) Plaintiffs have no obligation to reimburse any unreasonable litigation or non-litigation fees that were not incurred "in connection with" or "in respect of" an assignment or transfer by the Lessor or Owner Participant, and Frontier has no claim for damages on those grounds under Lease Form 2.

In light of the clear contractual limitations placed on the types of legal fees reimbursable under the relevant agreements, Frontier has not pleaded adequate facts showing that the litigation or non-litigation fees it seeks are properly within the scope of these provisions.  With respect to the non-litigation fees specifically, Frontier has alleged that it was required to spend $130,000 in attorneys' fees due to Plaintiffs' "improper extra-contractual actions."  (*See* CC ¶¶ 2, 95.) Elsewhere in its Amended Counterclaim, Frontier vaguely describes the non-litigation fees as "relating to" or "associated with the transactions." (*Id*. ¶¶ 78, 93.)  But Frontier's vague and conclusory descriptions are insufficient to plead that the fees were incurred in connection with Frontier's "cooperation with Lessor," as required for the thirteen Aircraft leased pursuant to Lease Form 1, or incurred "in connection with" or "in respect of" a transfer or assignment by the Lessor or Owner Participant of the Aircraft subject to Lease Form 2.

In addition, there is no provision in the Leases, Participation Agreement, or Guarantees that requires any Plaintiff to reimburse Frontier's litigation fees.  Frontier's attempt to impose such a requirement not provided for by the contracts contravenes the rule that "[c]ourts applying New York law should not infer a party's intention to provide counsel fees as damages for breach of contract unless the intention to do so is unmistakably clear from the language of the contract." *See*

*Valtus Cap. Grp., LLC v. Parq Equity Ltd. P'ship*, 2019 WL 5067179, at *7 (S.D.N.Y. Oct. 9, 2019) (dismissing a claim for attorneys' fees because the relevant contractual provisions contemplated reimbursement only of expenses in connection with plaintiff's efforts to perform under the contract, which did not "unmistakably evidence the parties' intent to provide for attorneys' fees in an action on the contract").  Indeed, Frontier's argument that it is entitled to reimbursement for $500,000 in litigation fees would give rise to an absurd result if upheld: Plaintiffs would be forced to finance Frontier's defense of a litigation caused by *Frontier's* breach of its contractual cooperation obligations *to Plaintiffs*.

Lastly, Frontier's assertion that the Guarantor Plaintiffs are bound to reimburse Frontier for its litigation and non-litigation costs pursuant to the Guarantees presupposes, erroneously, that Lessors have "fail[ed] to perform or comply with" their obligations under the Leases.  (Ex. 4 § 1.) As demonstrated above, there has been no such failure.  The Lessor Plaintiffs are under no obligation to reimburse litigation and non-litigation fees Frontier seeks, so the Guarantors likewise have no reason or obligation to provide for such payment.

## III.    FRONTIER'S COUNTERCLAIM SHOULD BE DISMISSED AS TO PLAINTIFFS THAT ARE NOT PARTIES TO THE RELEVANT AGREEMENTS

Under New York law, a breach of contract claim must be dismissed where the defendant is a non-party to the agreement in question because one must be a party to a contract in order to breach it.  *See Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963, 965 (2d Dep't 2019) ("One cannot be held liable under a contract to which he or she is not a party."); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) ("It is well established that, generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract.").  Frontier's counterclaim alleges breaches of provisions in the Leases and in the Participation Agreement.  However, Plaintiffs CAML, Accipiter, Vermillion, Accipiter Holdings,

Maverick, and Manchester are not parties to any of the Leases. Therefore, to the extent that Frontier's counterclaim arises from any purported breach of the Leases, such claim against these Plaintiffs must be dismissed.

Similarly, Plaintiffs CAML, Vermillion, Accipiter Holdings, Maverick, Manchester, and UMB Trustee are not parties to the Participation Agreement. Thus, to the extent that Frontier's counterclaim arises from any purported breach of the Participation Agreement, such claim should be dismissed as to those Plaintiffs.

Likewise, Plaintiffs CAML, Maverick, Manchester, UMB Trustee, and WF Trustee are not parties to the Guarantees. Thus, to the extent that Defendant's counterclaim arises from any purported breach of the Guarantees, such claim should be dismissed as any Plaintiff who is not a Guarantor.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion to dismiss should be granted and Frontier's Amended Counterclaim should be dismissed.

Dated: September 27, 2023
New York, New York

MILBANK LLP

/s/ *Jed M. Schwartz*

Jed M. Schwartz
Samantha A. Lovin
Emily Werkmann
55 Hudson Yards
New York, New York 10001
Tel: (212) 530-5000
JSchwartz@milbank.com
SLovin@milbank.com
EWerkmann@milbank.com

*Counsel for Plaintiffs-Counterclaim Defendants*

16