# **EXHIBIT 2**

EXECUTION VERSION

## Participation Agreement MSN 7524

**THIS PARTICIPATION AGREEMENT MSN 7524** (this "**Agreement**") is made as of this 14th day of December 2017, among:

(1) **ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED**, a company incorporated with limited liability under the laws of Ireland, with its registered office at 28/29 Sir John Rogerson's Quay, Dublin 2, Ireland ("**Owner Participant**");

(2) **WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, a national banking association formed under the federal laws of the United States of America, in its individual capacity only as expressly stated herein (in such capacity "**Bank**") and otherwise not in its individual capacity but solely as Owner Trustee under the Trust Agreement (as defined below) (in such capacity "**Owner Trustee**" or "**Lessor**"); and

(3) **FRONTIER AIRLINES, INC.**, a corporation incorporated under the laws of Colorado, with its principal place of business at 7001 Tower Road, Denver, Colorado 80249, U.S.A. ("**Lessee**").

### RECITALS:

**WHEREAS**, Owner Participant desires Lessor to continue leasing, and Lessor desires to continue leasing, the Aircraft to Lessee and Lessee desires to continue leasing the Aircraft from Lessor pursuant to the terms of the Lease; and

**WHEREAS**, in connection with the transaction described above, the parties hereto desire to make to, and obtain from, each other certain representations, warranties and covenants;

**NOW, THEREFORE**, in consideration of the mutual agreements herein contained, the parties hereto agree as follows:

**Section 1.**   Definitions.  Unless the context otherwise requires, the following terms shall have the following meanings for all purposes of this Agreement and shall be equally applicable both to the singular and plural forms of the terms defined.  Any capitalized terms not defined herein (including the Recitals) shall have the meanings ascribed to them in the Lease (as defined below).

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Effective Date**" means December 14, 2017.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended, and any regulations and rulings issued thereunder.

"**Estate**" means the trust estate created under the Trust Agreement.

"**Lease**" means that certain Aircraft Operating Lease Agreement dated as of June 9, 2014, as amended, supplemented , or modified from time to time, between Wells Fargo Bank

CHICAGO/#3066205.2

Northwest, National Association, not in its individual capacity, but solely as owner trustee, as Lessor, and Frontier Airlines, Inc., as Lessee.

"**OP Transfer**" shall have the meaning set forth in Section 3.1(a) hereof.

"**OP Transferee**" shall have the meaning set forth in Section 3.1(a)(1) hereof.

"**Owner Participant Agreements**" means this Agreement, the Trust Agreement, any supplement to the Trust Agreement, and each other agreement between Owner Participant and any other party to the Participation Agreement, relating to the foregoing.

"**Owner Trustee Documents**" means this Agreement, the Lease, the Lease Supplement, the Trust Agreement, any supplement to the Trust Agreement, and each other agreement between Owner Trustee and any other party to the Participation Agreement, relating to the foregoing.

"**Plan**" shall mean any employee benefit plan within the meaning of Section 3(3) of ERISA subject to Title I of ERISA, and any plan within the meaning of Section 4975(e)(1) of the Code subject to Section 4975 of the Code.

"**Securities Act**" shall mean the Securities Act of 1933, as amended from time to time.

"**Transaction Documents**" means the Owner Participant Agreements and all documents, instruments and certificates delivered pursuant hereto or thereto.

"**Trust Agreement**" means that certain Second Amended and Restated Trust Agreement (7524) dated as of December 14, 2017 between Owner Participant as trustor and Bank as trustee.

**Section 2.** Representations, Warranties and Covenants.

2.1  Owner Participant's Representations, Warranties and Covenants.

(a)  Representations and Warranties.  To induce the Lessee and Owner Trustee to enter into this Agreement and consummate the transactions contemplated hereby, Owner Participant represents and warrants that:

(1)  Status.  Owner Participant is duly incorporated and validly existing under the laws of Ireland.

(2)  Non-Conflict.  Execution, delivery and performance of this Agreement and the other Transaction Documents to which Owner Participant is a party do not contravene or constitute a default under (i) any law binding on Owner Participant, (ii) the constitutional documents of Owner Participant, or (iii) any document which is binding on Owner Participant or any of its assets.

(3)  Power and Authority.  Owner Participant has all necessary power and authority to execute, deliver and perform this Agreement and the other Transaction Documents to which Owner Participant is a party, and this Agreement and the other

Transaction Documents to which Owner Participant is a party have been duly authorized, executed and delivered by Owner Participant.

(4) <u>Approvals</u>. No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body that has not already been obtained is required for the due execution, delivery or performance by it of the Transaction Documents.

(5) <u>No Offers</u>. Neither Owner Participant nor anyone authorized by it to act on its behalf (it being understood that in proposing, facilitating and otherwise taking any action in connection with the financing contemplated in relation to the Operative Documents and agreed to by Owner Participant, Lessee has not acted as agent of Owner Participant) has directly or indirectly offered any interest in and to the Estate, the Trust Agreement or any similar interest for sale to, or solicited any offer to acquire any of the same from, any Person; Owner Participant's interest in the Estate and the Trust Agreement is being acquired for its own account and is being purchased for investment and not with a view to any resale or distribution thereof in violation of the Securities Act, provided that the disposition of its properties shall at all times be and remain within its control.

(6) <u>No Lessor Liens</u>. On the Effective Date, the Estate shall be free of Lessor Liens attributable to Owner Participant other than any Specified Lessor Liens.

(7) <u>ERISA</u>. Owner Participant is not acquiring its interest in the Aircraft, the Lease and the other Operative Documents or the Estate with funds that constitute, directly or indirectly, the assets of any Plan.

(8) <u>Brokers</u>. No Person acting on behalf of Owner Participant or Owner Trustee is or will be entitled to any broker's fee, commission or finder's fee in connection with the Transaction Documents.

(9) <u>Legal Validity</u>. Owner Participant's obligations under this Agreement and the other Transaction Documents to which Owner Participant is a party are legal, valid, binding and enforceable against Owner Participant in accordance with their terms except as such enforceability may be limited by (i) applicable bankruptcy and similar laws affecting creditors' rights generally and (ii) general principles of equity.

(10) <u>Eligible FAA Trust</u>. The Trust Agreement will be in a form that permits the Aircraft to be registered with the FAA in the name of the Owner Trustee (without regard to any provision of applicable law that permits FAA registration of an aircraft by limiting its location and usage), notwithstanding the failure of Owner Participant to be a "citizen of the United States" as defined in Section 40102(a)(15) of Title 49 of the U.S.C.

(11) <u>Owner Trustee</u>. On the Effective Date, Owner Trustee will have such title and interest in the Aircraft as was transferred to it by Airbus S.A.S. on the Delivery Date and such title and interest shall be sufficient to enable it to continue leasing

the Aircraft to Lessee under, and otherwise perform the obligations of Lessor under, the Lease.

(12) Not an Airline. Owner Participant is not an airline, aircraft operator, freight forwarder, or an Affiliate thereof.

(b) Covenants. To induce the Lessee and Owner Trustee to enter into this Agreement and consummate the transactions contemplated hereby, Owner Participant and Owner Trustee, as applicable, covenant and agree that:

(1) No Termination, etc. Owner Participant will comply with the provisions of the Trust Agreement applicable to it to the extent non-compliance would adversely affect Lessee, and will not terminate or revoke the trusts created by the Trust Agreement, a true and complete copy of which is attached hereto as Exhibit A, or amend, supplement or otherwise modify any provision of the Trust Agreement in such a manner as to adversely affect the rights of Lessee without Lessee's prior written consent.

(2) Removal of Trustee. So long as the Aircraft is subject to the Lease, Owner Participant will exercise its powers under the Trust Agreement to promptly remove the institution serving as Owner Trustee if such institution, to Owner Participant's knowledge, shall cease to be, or Owner Participant believes that the Owner Trustee is likely to cease to be, a "citizen of the United States" within the meaning of Section 40102(a)(15) of Title 49 of the U.S.C.

(3) Lessor's Performance. Owner Participant shall cause Owner Trustee to perform all of its obligations under the Owner Trustee Documents, including without limitation, providing Owner Trustee with sufficient funds to ensure that Owner Trustee will be able to refund any Security Deposit due to Lessee, pay any amounts that become due and payable to Lessee pursuant to Section 5.4 of the Lease and pay to Lessee all sums to be paid by Lessor to Lessee under the Lease, if any. To the extent of any nonperformance thereof by Owner Trustee, Owner Participant hereby assumes and agrees to perform the obligations of Owner Trustee and agrees to pay such amounts as may become payable by Owner Trustee under the Lease and other Owner Trustee Documents on a full recourse, joint and several basis, as and when due, as and to the extent expressly provided in the Lease and the other Owner Trustee Documents to be due and payable by Owner Trustee (including subject to any limitation or condition applicable to Lessor's payment obligations). Lessee shall be under no obligation to first make demand on and pursue Owner Trustee for performance of any of its obligations under the Owner Trustee Documents, but may instead immediately make demand upon and require Owner Participant to perform any obligation of Owner Trustee under the Owner Trustee Documents upon Owner Trustee's failure to perform the same.

(4) Quiet Enjoyment. In addition to, and not in lieu of the covenant of quiet enjoyment contained in the Lease, Owner Participant covenants and agrees with Lessee that so long as no Event of Default shall have occurred and be continuing, Owner Participant shall not, and Owner Participant shall not permit any person lawfully claiming through or under it to, interfere with Lessee's rights under the Lease, or any Permitted

Sublessee's rights under a Permitted Sublease, to the continued quiet use, possession and enjoyment of the Aircraft during the Lease Period; provided that if any of the insurance coverages required by Section 16 of the Lease are not in effect, Owner Participant may cause Lessor to require that the Aircraft be grounded during the period while such insurances are not in effect.  The lawful exercise of Owner Participant's rights of inspection or other rights provided under the Lease shall not be considered to be a breach of the foregoing covenant.

(5)     **Eligible FAA Trust**.  So long as the Aircraft is subject to the Lease, if the Trust Agreement shall cease to permit the Aircraft to be registered with the FAA in the name of the Owner Trustee (without regard to any provision of applicable law that permits FAA registration of an aircraft by limiting its location and usage), then Owner Participant shall (at its own expense and without reimbursement or indemnification from Lessee) as soon as is reasonably practicable, but in any event within sixty (60) days of when any responsible officer of Owner Participant, customarily having responsibilities for transactions comparable to those contemplated by this Agreement, obtains actual knowledge of such ineligibility, take such action as may be necessary to prevent any deregistration and maintain the United States registration of the Aircraft and full eligibility therefor without restriction as to use.  Owner Participant shall be responsible for any costs and expenses (including fees and disbursements of counsel) of the deregistration and subsequent reregistration of the Aircraft in the United States as a result of the failure of the Trust Agreement to be in the form required in order to permit the continued registration of the Aircraft with the FAA in the name of the Owner Trustee.

(6)     **Instructions to Owner Trustee**.  Owner Participant agrees that its execution of this Agreement and of the Trust Agreement shall constitute, without further act, authorization and direction by Owner Participant to Owner Trustee, subject only to the conditions precedent contained in the Lease:

(i)     to execute the relevant Owner Trustee Documents and any required FAA registration application with respect to the Aircraft and the Cape Town Registrations;

(ii)    to take such other action as may be required to be taken by Owner Trustee on or at any time following the date of the Effective Date by the terms of any Operative Document.

(7)     **Ownership**.  Owner Participant is the one hundred percent owner of the beneficial interests in the Estate and any transfer of such interest shall be made in accordance with Section 3 hereof.

2.2     **Owner Trustee's Representations, Warranties and Covenants**.

(a)     To induce the Lessee and Owner Participant to enter into this Agreement and consummate the transactions contemplated hereby, Owner Trustee hereby restates, as of the date hereof and as of the Effective Date, for the benefit of each of the Lessee and the Owner Participant each of the representations and warranties made by the Lessor in paragraph 2 of

Schedule 2 of the Lease, subject to the same limitations and disclaimers as set forth in the Lease, and each such representation, warranty, limitation and disclaimer is incorporated by reference as though set forth in full herein.

(b) Subject to and in accordance with the terms of the Trust Agreement (including without limitation Section 3.06 thereof), Owner Trustee will file any withholding or other information returns required by applicable law and regulations in the United States with respect to all payments received by it for the account of, or made by it to, Owner Participant and will withhold and deposit in a timely manner with the applicable governmental authority any Taxes required to be withheld under such laws and regulations with respect to such payments.

2.3 <u>Lessee's Representations, Warranties and Covenants</u>.  To induce the Owner Trustee and Owner Participant to enter into this Agreement and consummate the transactions contemplated hereby, Lessee hereby restates, as of the date hereof and as of the Effective Date, for the benefit of the Owner Trustee and Owner Participant, each of the representations and warranties of Lessee set forth in paragraphs (a) through (f) of Section 1 of Schedule 2 of the Lease, but, in the case of paragraphs (b) through (f) of such Section 1, only in respect of this Agreement.  Lessee also agrees that any claim it may otherwise be entitled to make with respect to a breach by Owner Participant of Section 2.1(b)(4) of this Agreement would be subject to the limitations set forth in the Lease, including without limitation, the limitations set forth in Sections 8.3 and 18.3 of the Lease. Lessee further agrees that the disclaimer of consequential damages set forth in Section 18.3 of the Lease shall apply to any claim hereunder against Owner Participant.  Finally, Lessee agrees, upon the request and at the sole expense of Owner Participant, to cooperate with Owner Participant in complying with its obligations under Section 2.1(b)(5) of this Agreement.

**Section 3.**   <u>Assignment or Transfer of Interests</u>.

3.1 <u>Transfer of Owner Participant's Interest</u>.

(a) Owner Participant may sell, assign or transfer (whether directly or indirectly through an operation of law transfer such as a merger, consolidation or sale of membership interests) all or any of its rights under the Owner Participant Agreements, including, without limitation, Owner Participant's rights, title and interests in and to the Aircraft and the Estate (an "**OP Transfer**"), only if it complies with the following conditions:

(1) the proposed purchaser, assignee or transferee (the "**OP Transferee**") shall confirm in writing, in a form reasonably satisfactory to Lessee, its undertaking to perform the obligations of Owner Participant in a form substantially similar to this Agreement;

(2) Owner Participant shall be responsible for Lessee's reasonable legal fees and other reasonable costs and expenses incurred in respect of such OP Transfer and shall pay such costs and expenses promptly upon demand therefor;

(3) the OP Transferee shall (i) not be an airline, aircraft operator, freight forwarder, or an Affiliate thereof and (ii) have (or be guaranteed, through a guarantee agreement reasonably acceptable to Lessee, by a person having) a minimum

tangible net worth of ▆▆▆▆▆▆ as determined by IFRS as of the time of and immediately after giving effect to such OP Transfer;

(4)   the OP Transferee must be a "citizen of the United States" under Section 40102(a)(15) of Title 49 of the U.S.C. or must otherwise permit Lessor to qualify for the continued United States registration of the Aircraft without restriction as to use;

(5)   the OP Transfer will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such OP Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such OP Transfer), it being acknowledged by Lessee that the inclusion of the OP Transferee as an Indemnitee and as an Additional Insured will not constitute an increase in Lessee's obligations, liabilities or risks; and

(6)   the OP Transfer shall not affect the U.S. registration of the Aircraft (assuming the Aircraft is registered in the U.S. at the time of the transfer) or the registration of the Aircraft in any other country where the Aircraft may be registered at the time of such OP Transfer.

(b)   Notwithstanding any such OP Transfer, Owner Participant will remain entitled to indemnification under and in accordance with the terms of the Lease, and will remain entitled to the benefit of the liability insurances effected pursuant to the Lease for a period of not less than two (2) years after such OP Transfer.

(c)   Upon compliance by Owner Participant and an OP Transferee with the terms and conditions of Section 3.1(a) of this Agreement, Lessee shall, at Owner Participant's cost and expense, execute and deliver in connection with such OP Transfer such documents and assurances (including a consent to the OP Transfer and an agreement substantially in the form of this Agreement) and take such further action as Owner Participant may reasonably request to establish or protect the rights and remedies created or intended to be created in favor of the OP Transferee in connection with such OP Transfer.

3.2   <u>Owner Trustee</u>.  Bank or any successor institution serving as Owner Trustee may resign or be removed by Owner Participant, a successor may be appointed, and a corporation may become Owner Trustee under the Trust Agreement in accordance with transfer provisions of the Trust Agreement and of the Lease.  So long as the Aircraft is subject to the Lease, any successor institution serving as Owner Trustee shall be a "citizen of the United States" within the meaning of Section 40102(a)(15) of Title 49 of the United States Code and, for so long as Owner Participant is not a U.S. person, any such successor institution serving as Owner Trustee shall be a U.S. bank or trust company, and such appointment shall not violate any provisions of the Act or create a relationship which would be in violation of the Act.

**Section 4.**   <u>Miscellaneous</u>.

4.1   <u>Incorporation of Miscellaneous Provisions of the Lease</u>.  The following provisions of the Lease are hereby incorporated by reference, mutatis mutandis, with all references in the incorporated provisions to the "Agreement" meaning this Participation

Agreement, all references to "Lessor" being references herein to "Lessor", "Owner Trustee" and "Owner Participant", all references to "Lessee" being references herein to "Lessee", and all references to "party" being references herein to each party to this Agreement:  Section 18 (Disclaimers); Section 23.6 (Time of Essence); Section 23.7 (Entire Agreement); Section 23.10 (Counterparts); Section 23.11 (Language); Section 23.14 (Invalidity of any Provision); Section 23.16 (True Lease); Section 23.17 (Section 1110); Section 25.1 (Governing Law) and Section 25.2 (Jurisdiction).

4.2    Successors and Assigns.  The terms of this Agreement shall be binding on, and inure to the benefit of, Lessee and its permitted successors and assigns, Lessor and its permitted successors and assigns and Owner Participant and its permitted successors and assigns.

4.3    Notices. Etc.  All notices and other communications under, or in connection with, this Agreement will, unless otherwise stated, be given and will become effective in the same manner as provided in Section 24.1 of the Lease.

The address, facsimile number and email of the Owner Participant is as follows:

Address:    Accipiter Investments Aircraft 4 Limited
28/29 Sir John Rogerson's Quay
Dublin 2
Ireland
Attn:    The Directors
Fax:    +353 1 517 0199
Email:    directors@accipiter.ie

4.4    Concerning Owner Trustee.  Except as otherwise expressly provided herein, it is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by Bank, not individually or personally but solely as owner trustee under the Trust Agreement, in the exercise of the powers and authority conferred and vested in it as trustee, (b) each of the representations, undertakings and agreements herein made on the part of the Owner Trustee is made and intended not as personal representations, undertakings and agreements by Bank, but is made and intended for the purpose of binding only the Estate and (c) nothing herein contained shall be construed as creating any liability on Bank, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto.  However, nothing in this Section 4.4 shall limit in scope or substance the general corporate liability of Bank (x) to the Owner Participant under the Trust Agreement, (y) for the representations, warranties, agreements, and covenants of Bank set forth in any of the Owner Trustee Documents or other Transaction Documents to which it is or becomes a party, or (z) for the consequences of its own gross negligence or willful misconduct.

4.5    Confidentiality.  Subject to the exceptions set forth in Section 23.12 of the Lease, the parties hereto agree to keep this Agreement and any documents, materials and information provided in connection with this Agreement or the Operative Documents confidential and shall not disclose, or cause to be disclosed the same to any Person.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Participation Agreement to be duly executed as of the day and year first above written.

"LESSEE"

FRONTIER AIRLINES, INC.

By: _____
Title:
         James G. Dempsey
         Chief Financial Officer

"OWNER PARTICIPANT"

ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED


By: _____
    Title:


By: _____
    Title:

"OWNER TRUSTEE" and "BANK"

WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity, except as expressly provided herein, but solely as Owner Trustee


By: _____
    Title:

IN WITNESS WHEREOF, the parties hereto have caused this Participation Agreement to be duly executed as of the day and year first above written.

"LESSEE"

FRONTIER AIRLINES, INC.

By:_____
       Title:

"OWNER PARTICIPANT"

ACCIPITER INVESTMENTS
AIRCRAFT 4 LIMITED

By: *Paul S[signature]*
       Title:
              **Paul Sheridan**
              **Attorney-in-fact**

By: *Christine Davin [signature]*
       Title:   **Christine Davin**
                **Attorney-in-fact**

"OWNER TRUSTEE" and "BANK"

WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity, except as expressly provided herein, but solely as Owner Trustee

By:_____
       Title:

IN WITNESS WHEREOF, the parties hereto have caused this Participation Agreement to be duly executed as of the day and year first above written.

"LESSEE"

**FRONTIER AIRLINES, INC.**

By:_____
  Title:

"OWNER PARTICIPANT"

**ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED**

By: _____
  Title:

By: _____
  Title:

"OWNER TRUSTEE" and "BANK"

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, not in its individual capacity, except as expressly provided herein, but solely as Owner Trustee

By:_____*/s/ Hillary Pavia*_____
  Title:   Assistant Vice President