# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARLYLE AVIATION MANAGEMENT LIMITED, ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.a.r.l., WELLS FARGO TRUST COMPANY, N.A., not in its individual capacity but solely in its capacity as OWNER TRUSTEE, UMB BANK, N.A., not in its individual capacity but solely in its capacity as OWNER TRUSTEE,

     *Plaintiffs*,

   v.

FRONTIER AIRLINES, INC.

     *Defendant*.

Case No. 1:23-cv-04774 (PAE)

[Rel. 1:22-cv-02943 (PAE)]

## FRONTIER AIRLINES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS THE AMENDED COUNTERCLAIM AND IN SUPPORT OF ITS CROSS-MOTION TO CONSOLIDATE THIS ACTION WITH LAWSUIT 2

**BINDER & SCHWARTZ LLP**
675 Third Avenue, 26th Floor
New York, New York 10017
(212) 510-7008

**LANE POWELL PC**
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204

*Attorneys for Defendant-Counterclaim Plaintiff Frontier Airlines, Inc.*

## <u>TABLE OF CONTENTS</u>

*Page*

PRELIMINARY STATEMENT .................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ............................................................................. 3

LEGAL STANDARD ................................................................................................................ 7

ARGUMENT ............................................................................................................................. 7

I.      FRONTIER STATES A VALID CLAIM FOR BREACH OF CONTRACT ................... 7

        A.      Plaintiffs Breached the Transfer Provisions by Unreasonably Demanding that
                Frontier Sign Transfer Documents that Would Have Waived Frontier's
                Contractual Rights ................................................................................................ 8

        B.      Plaintiffs Breached the Agreements by Failing to Reimburse Frontier's Fees ...... 10

        C.      Plaintiffs Breached Frontier's Right to Quiet Enjoyment .................................... 14

II.     FRONTIER STATES A CLAIM AS TO EACH PLAINTIFF ........................................ 15

III.    CONSOLIDATION WITH LAWSUIT 2 IS WARRANTED ......................................... 15

CONCLUSION ......................................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*255 Butler Assocs., LLC v. 255 Butler, LLC,*
  102 N.Y.S.3d 699 (N.Y. App. Div. 2019) ..............................................................14

*A&L Auto Repair, Inc. v. Hudson Petroleum Realty, LLC,*
  No. 17-CV-3529, 2018 WL 10517080 (E.D.N.Y. Mar. 6, 2018)............................15

*Bison Cap. Corp. v. ATP Oil & Gas Corp.,*
  No. 10-CV-0714, 2010 WL 2697121 (S.D.N.Y. June 24, 2010) ............................12

*Bison Cap. Corp. v. ATP Oil & Gas Corp.,*
  No. 10-CV-0714, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010)............................12

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.,*
  233 F.3d 697 (2d Cir. 2000)....................................................................................16

*Dangler v. N.Y.C. Off Track Betting Corp.,*
  193 F.3d 130 (2d Cir. 1999)....................................................................................11

*Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.,*
  No. 22-CV-2943, 2023 WL 3868585 (S.D.N.Y. June 7, 2023) ................................7

*Herbert Paul, CPA, PC, v. 370 Lex, L.L.C.,*
  794 N.Y.S.2d 869 (N.Y. Sup. Ct. N. Y. Cnty. 2005)..............................................15

*Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC,*
  208 F.R.D. 59 (S.D.N.Y. 2002) ..............................................................................15

*Johnson v. Celotex Corp.,*
  899 F.2d 1281 (2d Cir. 1990)..................................................................................16

*In re Lehman Bros. Holdings Inc.,*
  469 B.R. 415 (Bankr. S.D.N.Y. 2012) ....................................................................12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  505 B.R. 135 (S.D.N.Y. 2013)................................................................................12

*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.,*
  8 F. Supp. 2d 357 (S.D.N.Y. 1998).........................................................................11

*Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002)......................................................................7

*Yunus v. Robinson*,
    No. 17-CV-5839, 2018 WL 3455408 (S.D.N.Y. June 29, 2018) .............................9

Defendant-Counterclaim Plaintiff Frontier Airlines, Inc. ("Frontier") respectfully submits this memorandum of law in opposition to the Motion to Dismiss the Amended Counterclaim (ECF No. 32) (the "Motion") filed by plaintiffs[1] (hereafter collectively "Plaintiffs") and in support of Frontier's cross-motion to consolidate this case with the related case, *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, No. 22-cv-02943 (PAE) ("Lawsuit 2").

## PRELIMINARY STATEMENT

As the Court is aware, this case, originally filed by Plaintiffs in state court, is substantially intertwined with Lawsuit 2.  The two cases involve the same contract terms.  The recent transfer transactions that are at issue in this lawsuit are the same transactions that were the focus of the recent preliminary injunction litigation in Lawsuit 2.  In this action, Plaintiffs claim they were damaged by Frontier's refusal to waive its contractual rights with regard to those same transfers.  In response, and as compelled by the Federal Rules of Civil Procedure, Frontier asserted its counterclaim alleging that Plaintiffs, not Frontier, had breached the Leases, Participation Agreement, and Guarantees in connection with the recent transfers by making unreasonable demands on Frontier and by attempting to diminish Frontier's rights with regard to a potential judgment in *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, No. 20 Civ. 9713 (LLS) ("Lawsuit 1").

Plaintiffs' motion to dismiss the counterclaim should be rejected.  Frontier's breach of contract counterclaim concerns the same issue as Plaintiffs' breach of contract claim in this

---

[1] The named plaintiffs are Carlyle Aviation Management Limited ("CAML"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.a r.l. ("Manchester"), Wells Fargo Trust Company, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("Wells Fargo"), and UMB Bank, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("UMB").

action—i.e., did the parties' contracts[2] allow Plaintiffs to require Frontier to sign the proposed transfer documents and give up valuable protections without any substitute for those rights? Frontier's counterclaim also concerns the same transfer provisions as those at issue in Lawsuit 2. As the Court has held in Lawsuit 2, Frontier has stated a claim for breach of the transfer provisions. Frontier also states a claim for breach of the agreements' requirement to reimburse Frontier for legal fees incurred in connection with the aircraft transfer. Plaintiffs acknowledge their contractual obligation to reimburse Frontier—having recently paid a portion of Frontier's outstanding fees—a fact that is enough on its own to defeat this aspect of the Motion.

Frontier's counterclaim also properly alleges that Plaintiffs breached Frontier's covenant of quiet enjoyment. As explained in the counterclaim, and as was the subject of the preliminary injunction litigation in Lawsuit 2, Plaintiffs jeopardized Frontier's continued use and enjoyment of the fourteen aircraft when it wrongly issued default notices, threatening to ground, impound, and deregister the planes. There is no reason for the Court to deny Frontier the opportunity to recover the damages it suffered as a result.

Finally, Plaintiffs' Motion highlights the necessity of consolidating this case with Lawsuit 2. It would be difficult and inefficient, if not outright impossible, to address the matters in dispute in this case without also addressing the core controversies in Lawsuit 2. The two cases have already been deemed related and placed on the same discovery track. No party would suffer prejudice by having the two cases consolidated. And consolidation would allow both Frontier and the Carlyle entities to streamline their pleadings and avoid the risk of inconsistent rulings. Thus, all parties would benefit from the litigation efficiencies that would be achieved.

---

[2] The contracts at issue consist of the Leases, the Participation Agreement, and the Guarantees.

For these reasons, as explained below, Plaintiffs' Motion should be denied, and this case should be consolidated with Lawsuit 2.

## RELEVANT FACTUAL BACKGROUND[3]

Frontier's counterclaim is based on the following provisions in the Leases and Participation Agreements that put certain limits and conditions on Plaintiffs' ability to sell or transfer their interest in the Aircraft. All but one of the Aircraft are subject to substantially similar terms, referred to as Lease Form 1. Declaration of Jed M. Schwartz ("Schwartz Decl."), ECF No. 33-3 ("Lease Form 1"). Section 20.2(a) of Lease Form 1 provides:

> Each of Lessor and Owner Participant (and any subsequent permitted assignee or transferee) shall have the right at any time, at its own expense and upon prior written notice to Lessee, to transfer ownership or beneficial ownership, as applicable, of the Aircraft, or to assign (including to assign as security), mortgage, novate, transfer, grant participations in, or otherwise dispose of its rights and obligations under this Agreement and the other Operative Documents, to any other person by outright transfer or assignment or collateral assignment or by operation of law and Lessee hereby consents to any such transfer or assignment; **provided that**:
>
> (i) Lessee shall have no greater financial obligation or liability under this Agreement and the other Lessee Documents as a result of such transfer based on the facts and circumstances existing and applicable laws in effect at the time of such transfer, than it would have had if such transfer had not taken place . . .
>
> (ii) such transfer shall not result in any restriction, based on the facts and circumstances existing and applicable laws in effect at the time of such transfer, on Lessee's rights under this Agreement or the other Lessee's Documents or on Lessee's use or operation of the Aircraft;
>
> . . .
>
> (v) Lessor shall have reimbursed to Lessee (or shall have agreed in writing to promptly reimburse to Lessee following such assignment, transfer or novation) Lessee's reasonable and invoiced out-of-pocket costs and expenses incurred in

---

[3] Capitalized terms have the meaning ascribed to them in the Amended Counterclaim, ECF No. 30 ("Am. Counterclaim"). The history of the parties' dispute is set forth more completely in the Amended Counterclaim. *Id.* ¶¶ 19-79.

connection with its cooperation with Lessor under this Clause 20.2, including reasonable legal fees.

*Id.* § 20.2(a). Section 22.3 of Lease Form 2, which governs the final Aircraft, provides:

Lessor may sell, assign, novate or otherwise transfer its right, title and interest in the Aircraft or this Lease without Lessee's consent (a "**Transfer**"), subject to the following conditions:

(i) the proposed purchaser, assignee or transferee (the "**Transferee**") shall enter into an agreement, reasonably satisfactory to Lessee, assuming all obligations of Lessor under this Lease and the other Operative Documents and of Beneficiary under the Participation Agreement and other Operative Documents;

(ii) Lessor shall be responsible for Lessee's reasonable legal fees and other reasonable costs and expenses incurred in respect of such Transfer and shall pay such costs and expenses promptly upon demand therefor;

. . .
(v) any Transfer will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits, in each case under any Operative Document or in respect of the Aircraft (to be determined in each case as at the time of such Transfer by applying all applicable laws as are enacted and/or in effect on the effective date of such Transfer) . . . .

Schwartz Decl. Ex. 1 ("Lease Form 2") § 22.3.

This Aircraft is also subject to a Participation Agreement. Section 3.1 of the Participation Agreement provides that the Owner Participant may sell or transfer its interest *only* if all of the following conditions are met:

(1) the proposed transferee confirms in writing, in a form reasonably satisfactory to Frontier, its undertaking to perform the obligations of Owner Participant in a form substantially similar to the Participation Agreement;

(2) the Owner Participant pays Frontier's reasonable legal fees and costs incurred in connection with the transfer;

(3) the transferee entity meets certain requirements, including that it is a citizen of the U.S.; not an airline or aircraft operator; and has, or through a guarantee acceptable to Frontier by a person having, a minimum net worth of a specified value in the tens of millions of dollars;

(4) the transfer does not increase Frontier's obligations or risks or diminish Frontier's rights and benefits under any of the lease documents; and

(5) the transfer does not affect the registration of the aircraft.

*See* Schwartz Decl. Ex. 2 ("Participation Agreement") § 3.1.  All of the Leases are also subject to Guarantees, which require the Guarantors to (i) perform and fulfill the obligations of the Lessors if they default, and (ii) pay all of Frontier's reasonable legal fees incurred in enforcing the Guaranty.

The Leases also protect Frontier from disturbances, interferences, and threats to its use and quiet enjoyment of the Aircraft.  Section 4.3(a) of Lease Form 1 provides that "so long as no Event of Default has occurred and continuing, Lessor will not disturb the continuous quiet use, possession and enjoyment of the Aircraft by Lessee during the Term."  Am. Countercl. ¶ 85. Section 9.1 of Lease Form 2 similarly states that Lessor shall not "interfere with the quiet use, possession and enjoyment of the Aircraft by Lessee . . . during the Lease Period . . . ."  Lease Form 2 § 9.1.

As the Court is aware, Plaintiffs informed Frontier in June 2022 that they had granted security assignments without Frontier's permission and demanded that Frontier add the new unpermitted assignees to Frontier's insurance policies.  Am. Countercl. ¶ 34.  In November 2022, they informed Frontier that they intended to sell four of the leased aircraft to two different third parties.  Am. Countercl. ¶ 38.  Frontier proposed modifications to the various draft agreements that were necessary to protect its interests, which modifications Plaintiffs rejected.  *Id.* ¶ 39-42. Plaintiffs' refusal to provide information requested by Frontier only compounded Frontier's concerns.  *Id.* ¶¶ 39-43.  Frontier also offered to withdraw the proposed modifications if Plaintiffs would provide Frontier with alternate security such as a letter of credit, a bond, or a corporate guarantee, but Plaintiffs again refused.  *See id.* ¶¶ 43-56.  Instead, they filed this

action—initially in state court and with no advance notice to Frontier. *Id.* ¶¶ 57, 65. At the same time, they served notices of default on Frontier, threatening to ground, impound, and deregister the Aircraft—threats that, if carried out, would have devastated Frontier and harmed many thousands of passengers. *Id.* ¶¶ 57-62.

In light of Plaintiffs' threat, Frontier was forced to seek emergency relief in Lawsuit 2 to eliminate the ongoing threatened disturbance to its use of the Aircraft. *Id.* ¶¶ 62-66. After the Court entered a temporary restraining order and a preliminary injunction to prevent Plaintiffs from carrying out their threat, Plaintiffs agreed to provide a guarantee similar to what Frontier had proposed six months earlier. *See id.* ¶¶ 67, 70-71. As soon as Plaintiffs executed the guarantee, Frontier promptly finalized and executed the transaction documents. *Id.* ¶¶ 72-73.

Beginning in March 2023, Frontier repeatedly asked Plaintiffs to fulfill their obligation to pay Frontier's fees in connection with the actual and proposed transfers, including Frontier's Lawsuit 2 fees relating to the AMCK-Carlyle transactions and the more recent proposed transactions that were the subject of the TRO and preliminary injunction. *Id.* ¶¶ 74-76. Plaintiffs acknowledged their contractual obligation to pay non-litigation fees, but flatly refused to pay any litigation-related fees. *Id.* ¶ 75. Thus, in March 2023, Frontier provided Plaintiffs with an invoice for its non-litigation legal fees incurred up to that date, without waiving the right to collect the litigation fees. *Id.* ¶ 76. Plaintiffs failed for months to pay even the non-litigation fees they had agreed were owed. *Id.* ¶ 77.

In August 2023, after five months of delay, Plaintiffs asked for more detail about the fees that had been provided to Plaintiffs in March. *Id.* ¶ 78. Frontier sent a detailed breakdown of its non-litigation fees. *Id.* In response, Plaintiffs agreed to pay approximately $160,000 of those fees. *Id.* Plaintiffs agreed to consider paying more upon receipt of unspecified additional

information, and the parties are continuing to discuss the unpaid non-litigation fees, but to date Plaintiffs have categorically objected to and have not paid any fees relating to the litigation necessitated by Plaintiffs' contract breaches.[4]

## LEGAL STANDARD

A "motion to dismiss counterclaims is governed by Rule 12(b)(6)," and is evaluated under the same standards as a motion to dismiss a complaint. *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). "When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, drawing all reasonable inferences in favor of the [claimant]." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, No. 22-CV-2943 (PAE), 2023 WL 3868585, at *5 (S.D.N.Y. June 7, 2023) (citation and quotation marks omitted).

## ARGUMENT

### I.    FRONTIER STATES A VALID CLAIM FOR BREACH OF CONTRACT

There are three independent bases for Frontier's counterclaim for breach of contract: (i) Plaintiffs' demand that Frontier sign unreasonable transfer documents that would have waived Frontier's rights as well as Plaintiffs' issuance of improper and damaging default notices; (ii) Plaintiffs' failure to fulfill the contractual requirement to reimburse Frontier for its reasonable fees in connection with the transfers; and (iii) Plaintiffs' disturbance of Frontier's rights to quiet

---

[4] Frontier acknowledges—and alleged in its Amended Counterclaim, Am. Countercl. ¶ 78—that Plaintiffs paid a portion of Frontier's non-litigation fees a few days before the Amended Counterclaim was filed. Of course, Frontier does not seek recovery for amounts paid. Frontier also acknowledges that Plaintiffs' counsel has offered to meet and confer about Frontier's outstanding non-litigation fees. We plan to have those discussions with the goal of narrowing the dispute concerning non-litigation fees.

enjoyment of the aircraft.[5]  For the reasons set forth below, Plaintiffs' arguments that Frontier

has failed to plead a valid counterclaim should be rejected.

### A.    Plaintiffs Breached the Transfer Provisions by Unreasonably Demanding that Frontier Sign Transfer Documents that Would Have Waived Frontier's Contractual Rights

Plaintiffs claim that Frontier has not alleged a valid breach of the transfer provisions in

Lease Forms 1 or 2 because, according to Plaintiffs, the transfer provisions "impose[] no

obligation on Plaintiffs to provide Frontier with 'reasonable assurances' of anything."  Mot. at

10.  But the Court has already rejected Plaintiffs' "no obligation" argument—twice—and should

reject it a third time here.

In Lawsuit 2, Defendants moved to dismiss Frontier's breach of contract claim, which is

premised on the same transfer provision requirements.  The Court's June 7, 2023 order in

Lawsuit 2 states:

> The decisive questions, in sequence, thus are whether (1) the Carlyle Transaction falls within the transactions contemplated by Section 20.2(a); and (2) if so, whether the SAC adequately pleads that defendants breached their obligations under Section 20.2(a), to wit, to give "prior written notice" to Frontier and ensure that, following the transaction, Frontier has "no greater financial obligation or liability" under the Lease Agreement.

Opinion & Order at 16, ECF No. 59, Lawsuit 2.  The Court went on to rule as follows on these

issues:

> The Court finds, with Frontier, that (1) the Carlyle Transaction is covered by Section 20.2(a) (and is specifically contemplated by Section 20.2(a)(iii)); and (2) the SAC adequately pleads that defendants failed to meet their disclosure and guarantee obligations under Section 20.2(a).

*Id.* at 17.

---

[5] Plaintiffs do not challenge that, under the Guarantees, the Guarantors are required to fulfill the obligations of the lessors upon lessors' default, as has occurred here.

The Court again addressed the issue in its July 18, 2023 oral ruling converting Frontier's temporary restraining order into a preliminary injunction.  July 18, 2023 Hr'g Tr., ECF No. 110-1, Lawsuit 2.[6]  The Court held that, on the pre-discovery record, Frontier raised sufficiently serious questions going to the merits as to whether Plaintiffs' transfers breached the Leases' transfer requirements so as to justify a preliminary injunction.  In doing so, the Court held that Frontier had met—a standard more exacting than what is applicable to this Motion.  *Id.* at 15; *see Yunus v. Robinson*, No. 17-CV-5839, 2018 WL 3455408, at *15 (S.D.N.Y. June 29, 2018) ("[A] plaintiff seeking a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) must do more than survive a motion to dismiss")*, report and recommendation adopted*, 2019 WL 168544 (S.D.N.Y. Jan. 11, 2019).

The Court's reasoning applies equally to Frontier's counterclaim in this proceeding, which concerns the same provisions and the same proposed transfers.  Moreover, Plaintiffs' Motion provides no new arguments and no reason for the Court to depart from its prior interpretations of the parties' agreements.

Section 20.2(a) of Lease Form 1 provides that the Lessor and Owner Participant have the right to transfer or assign their interest in the Aircraft provided that, inter alia, Lessee has "no greater financial obligation or liability under [the Leases] and the other Lessee Documents, and that such transfer does not "result in any restriction . . . on Lessee's rights" under the Agreement, the Lease Documents, or its use or operation of the Aircraft.  *See* Am. Countercl. ¶ 7; (Lease

---

[6]  This ruling pertained not only to the same contract provisions at issue here, but also the same transfers that are the subject of this lawsuit.  *Compare* July 18, 2023 Hr'g Tr. at 15:15-22 ("Frontier's claim here is that defendants forced through transfers of ownership with respect to aircraft as to which Frontier's consent was required, but as to which Frontier reasonably withheld consent. Frontier's basis for withholding consent had to do with the impact of the transfers on its ability to collect in the lawsuit before Judge Stanton. It claims that the transfers denuded the defendants in that case of the assets to pay out a judgment for breach of contract.") *with* Am. Countercl. ¶¶ 81-90.

Form 1 § 20.2(a). Lease Form 2 similarly provides that Lessor may sell or transfer its interest in the Aircraft only if, inter alia, the transfer "will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits" under the operative lease documents or in respect of the Aircraft. Am. Countercl. ¶ 8; Lease Form 2 § 22.3. The Participation Agreement further provides that the Owner Participant "may sell, assign, or transfer" its interests "*only if it complies with the following conditions*," including the condition that the transfer "will not increase Lessee's obligations, liabilities (financial or otherwise), or risks or diminish Lessee's rights and benefits" under the agreements or in the Aircraft. *See* Participation Agreement § 3.1 (emphasis added).

These provisions require that, if Plaintiffs wish to sell, transfer, or assign their interests, they must comply with the requirements specified in the provisions or the transactions cannot be deemed approved by Frontier. Yet, instead of complying with the requirements, as alleged in the Amended Counterclaim, Plaintiffs insisted that Frontier acquiesce to transaction documents that *would* diminish Frontier's rights by eliminating Frontier's interest in the aircraft needed to secure a judgment in Lawsuit 1. *See* Am. Countercl. ¶¶ 39-42. Indeed, in response to Frontier's attempts to hold Plaintiffs to their obligations under the transfer provisions, Plaintiffs went so far as to issue Notices of Default that threatened irreparable harm to Frontier. *See id.* ¶¶ 60-61. These facts, all alleged in Frontier's counterclaim, plainly state a breach of Plaintiffs' obligations under the transfer provisions as the Court has already construed them.

**B.      Plaintiffs Breached the Agreements by Failing to Reimburse Frontier's Fees**

Plaintiffs next argue that Frontier "has failed to allege a breach of any obligation to pay legal costs." Mot. at 12. But that is simply not true. The Amended Counterclaim expressly alleges that the Leases and the Participation Agreement require Plaintiffs to reimburse Frontier

for its legal fees incurred in connection with the security assignments and transfers proposed by Plaintiffs.[7]

Plaintiffs in fact concede that under the plain terms of these provisions, they must pay Frontier's reasonable, non-litigation fees that Frontier incurred in dealing with the transfers. Mot. at 12. Frontier alleges—and Plaintiffs concede—that Plaintiffs have not reimbursed over $130,000 in Frontier's non-litigation legal fees, even though they were first invoiced in March 2023. Am. Countercl. ¶¶ 75-78.

Plaintiffs point out that they have reimbursed approximately $160,000 of Frontier's fees—a fact Frontier notes in its pleading. *See* Am. Countercl. ¶ 78. But it remains true that, to date, Plaintiffs have failed to pay the remaining $130,000 in non-litigation fees or *any* of Frontier's litigation-related fees. *See id.*[8] Plaintiffs' contested factual arguments about whether Frontier's fees are "reasonable" and whether Frontier sufficiently cooperated with Plaintiffs' requests[9] are improper on a motion to dismiss and most be disregarded. *See Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.*, 8 F. Supp. 2d 357, 361 (S.D.N.Y. 1998) (issues of fact

---

[7] *See, e.g.*, Am. Countercl. ¶ 74; *see also* Lease Form 1 § 20(a)(5) (requiring Lessor to "reimburse[] to Lessee . . . Lessee's reasonable and invoiced out-of-pocket costs and expenses incurred in connection with its cooperation [under this provision], including reasonable legal fees"); Lease Form 2 § 22.2(2) ("Lessor shall pay all reasonable and documented out-of-pocket costs and expenses, including reasonable fees and disbursements of counsel" incurred in connection with any assignment); Lease Form 2 § 22.3(ii) ("Lessor shall be responsible for Lessee's reasonable legal fees . . . incurred in respect of" a transfer); Participation Agreement § 3.1(a) (Lessor may transfer its interests "*only if it complies* with the following conditions" including that it "be responsible for Lessee's reasonable legal fees . . . incurred in respect of such [transfer] and *shall* pay such costs and expenses promptly upon demand") (emphasis added).

[8] The email included in Plaintiffs' papers and as Exhibit 5 to the Schwartz Declaration confirms this fact. Schwartz. Decl. Ex. 5 (Plaintiffs paid "a portion of the invoiced Lane Powell fees"). In any event, the email is not properly before the Court on this motion to dismiss. *Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (on a motion to dismiss, court is limited to facts stated in the complaint, exhibits, and documents incorporated by reference). And Plaintiffs' insistence that it may yet still pay some of Frontier's outstanding fees does not cure its ongoing breach of its obligation. Until Frontier has been fully reimbursed, Plaintiffs remain in breach.

[9] Plaintiffs' reliance on their own unproven allegations in the Complaint surely is insufficient to establish that Frontier "repeatedly breached" a supposed obligation to "cooperat[e]." Mot. at 13.

cannot be decided on a motion to dismiss); *see Bison Cap. Corp. v. ATP Oil & Gas Corp.*, No. 10-CV-0714, 2010 WL 2697121, at *5 (S.D.N.Y. June 24, 2010), (on motion to dismiss, court's function is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof") (internal quotations and citations omitted), *report and recommendation adopted*, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).  Plaintiffs further argue that the agreements do not specify a "date certain" by which Plaintiffs must tender payment to Frontier.  Mot. at 12.  But, as alleged in the Amended Counterclaim, Lease Form 2 requires Plaintiffs to pay Frontier's fees "promptly" upon demand.  *See* Am. Countercl. ¶ 74.  In any event, Plaintiffs' argument is not persuasive on a motion to dismiss: the terms of the agreement require payment of Frontier's legal fees in connection with a transfer, and Plaintiffs have not done so. These allegations are sufficient to state a claim and to defeat a motion to dismiss.

The Court should also reject Plaintiffs' invitation to rule that Frontier has not pled a plausible claim for recovery of its litigation fees.  The Amended Counterclaim alleges that these litigation fees arose in connection with Plaintiffs' transfer requests.  *See id*. ¶ 79.  Plaintiffs argue that Frontier has failed to allege that its fees are sufficiently related to the transactions.  Mot. at 13-14.  This argument fails for the following reasons.

Both Lease Forms 1 and 2 require certain of the Plaintiffs to pay Frontier's fees incurred "in connection with" the transfers.  The phrase "in connection with" is interpreted "broadly," synonymous with "related to."  *In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 442 (Bankr. S.D.N.Y. 2012) (noting that "in connection with" should be interpreted liberally); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 145 (S.D.N.Y. 2013) ("in connection with" is "very broad" term) (internal citation and quotation marks omitted).  Lease Forms 1 and

2 require Plaintiffs to reimburse all fees "incurred" "in connection with" either "[Frontier's] cooperation with Lessor" (Lease Form 1) or the security assignment or transfer (Lease Form 2). *See* Lease Form 1 § 20.2(a)(v); Lease Form 2 § 22.2 & 22.3.  The Guarantees similarly require that the Guarantors will "be liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by Lessee in connection with the enforcement of this Guaranty."  *See* Schwartz Decl. Ex. 4 ("Guarantee") § 2.2.  Because Frontier has stated a claim for breach of the Leases and Participation Agreement, Plaintiffs plainly must pay under the Guarantees' straightforward and broad fee provisions.  *See supra* n.5.

Frontier's legal fees—both non-litigation and litigation—were "incurred" "in connection with"—indeed, as a direct result of—Plaintiffs' proposed transactions.  The non-litigation fees cover Frontier's legal costs and expenses incurred reviewing, analyzing, negotiating, and drafting the documentation provided to Frontier concerning the transfers.  *See* Am. Countercl. ¶¶ 75-78.  And Plaintiffs know this, as Frontier—at the request of Plaintiffs—provided detailed invoices supporting the fee amounts.  *Id.* ¶ 78.  Similarly, the litigation fees have been—and continue to be—incurred as a direct consequence of the manner in which Plaintiffs handled the lease-transfer transactions.  *See id.* ¶ 79.

Finally, Plaintiffs' argument that Frontier did not sufficiently "cooperate" with Lessors ignores the facts and Frontier's pleadings, and is not a ground to dismiss Frontier's counterclaim.  Frontier alleges that it negotiated with Plaintiffs in good faith for months in an effort to reach a mutually acceptable resolution, *id.* ¶¶ 39-56, but it was Plaintiffs who abruptly issued Notices of Default and filed this action against Frontier.  *Id.* ¶ 60.  Once Frontier obtained an injunction protecting its Aircraft from Plaintiffs' threat, Frontier continued to negotiate with Plaintiffs to resolve the dispute.  *Id.* ¶¶ 70-73.  Thus, even if Plaintiffs' reading making, payment of fees

conditional upon cooperation, is correct, Frontier has more than sufficiently alleged its cooperation.[10]

For these reasons, Frontier has sufficiently pled that Plaintiffs' failure to reimburse Frontier for its legal fees constitutes breach of contract.

### C.    Plaintiffs Breached Frontier's Right to Quiet Enjoyment

In addition to the breaches arising from the transfer provisions, Frontier alleges that, under both the Leases and at common law, Plaintiffs breached Frontier's right to quiet enjoyment of the Aircraft.  In their Motion, Plaintiffs argue that Frontier must allege actual or constructive eviction from the aircraft in order to plead a claim.  Mot. at 11.  But Plaintiffs ignore the plain language of the agreements, which require that Plaintiffs not *interfere* or *disturb* Frontier's use, possession, or enjoyment of the Aircraft.  *See, e.g.*, Am. Countercl. ¶ 16 (Section 4.3(a) of Lease Form 1 provides that Lessor "will not disturb the continuous quiet use, possession and enjoyment of the Aircraft").  Frontier plainly alleges that Plaintiffs interfered with and disturbed Frontier's rights by improperly defaulting Frontier under each of the Leases and by threatening to ground, impound, and/or deregister the Aircraft as a result of the alleged default.  *Id.* ¶¶ 62-64.  And the threat was real and imminent: Frontier was forced to move for emergency relief because Plaintiffs refused to agree that they would not ground the planes.  *See id.* ¶¶ 66-67, 94; *see 255 Butler Assocs., LLC v. 255 Butler, LLC,* 102 N.Y.S.3d 699, 701 (N.Y. App. Div. 2019) (recognizing that issuing wrongful default notice can be a basis for breach of quiet enjoyment).

---

[10] Even if this argument were correct (and it is not), it would not relieve Plaintiffs of their obligations to pay Frontier's legal fees.  The "cooperat[ion]" language does not appear in either the Guarantees or Lease Form 2, and those agreements would therefore not be subject to this supposed limitation.

But even if actual or constructive eviction is required, Frontier meets its burden.  Frontier need only plead that Plaintiffs' actions resulted in a "diminution in [its] enjoyment" of the leased property.  *A&L Auto Repair, Inc. v. Hudson Petroleum Realty, LLC*, No. 17-CV-3529, 2018 WL 10517080, at *8 (E.D.N.Y. Mar. 6, 2018).  There is no question that during the period of time when Frontier faced the imminent threat of having its planes seized or grounded, its operations were negatively impacted and its quiet enjoyment rights under the lease were violated. *See Herbert Paul, CPA, PC, v. 370 Lex, L.L.C.*, 794 N.Y.S.2d 869, 872 (N.Y. Sup. Ct. N.Y. Cnty. 2005).

## II.    FRONTIER STATES A CLAIM AS TO EACH PLAINTIFF

Plaintiffs' request to dismiss the Counterclaim with respect to certain of the eight named Plaintiffs should be denied.  Indeed, Plaintiffs' Complaint asserts contract claims against Frontier on behalf of all Plaintiffs.  *See* Compl. ¶¶ 69-75, ECF No. 1-2.  Plaintiffs allege that the Leases "are binding agreements" and that "Plaintiffs have fulfilled their obligations" under the Leases. *Id.* ¶¶ 70-71.  By its counterclaim, Frontier alleges breaches of those and additional Leases, the Participation Agreement, and the Guarantees.  Frontier's claim should not be dismissed as to any of the Plaintiffs.

## III.    CONSOLIDATION WITH LAWSUIT 2 IS WARRANTED

Frontier cross-moves to consolidate this proceeding with Lawsuit 2 in the interest of judicial economy.  Rule 42(a) of the Federal Rules of Civil Procedure "empowers a federal court, in the interest of judicial economy, to consolidate actions involving a common question of law or fact."  *Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002). The Court's discretion to consolidate is "broad," and considerations such as avoiding duplicative

15

discovery or multiple trials, favor consolidation.  *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990).

Consolidation is appropriate here.  Both actions concern the interpretation and meaning of not only the same agreements (the Leases, Participation Agreements, and Guarantees), but the same provisions within those agreements (the transfer provisions).[11]  Both actions concern the same events that transpired from 2021 through 2023, including Carlyle's purchase of AMCK Aviation Holding Ireland Ltd.'s assets and Carlyle's attempted security assignments and transactions.  Discovery, including document discovery and depositions, will substantially overlap.  And no prejudice will occur from consolidation:  Lawsuit 2 and Lawsuit 3 have the same discovery deadlines, *see* ECF No. 21; Lawsuit 2, ECF No. 103, and no trial dates have been set.

Given the overlapping parties and discovery, and the lack of prejudice, consolidation is appropriate.

---

[11] In a footnote, Plaintiffs argue that Frontier's counterclaim in this action is impermissible claim splitting because it is similar to the relief Frontier seeks in Lawsuit 2. Mot. at 9 n.7. But it is Plaintiffs who have impermissibly split their claim, not Frontier.  Plaintiffs' claims in this lawsuit are subject to dismissal under Fed. R. Civ. P. 13(a)(1)(A) because they are compulsory counterclaims in Lawsuit 2, and Frontier reserves the right to seek dismissal of these claims on that basis in the event the actions are not consolidated.  *See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.,* 233 F.3d 697, 699 (2d Cir. 2000) (claim is compulsory counterclaim if a logical relationship exists between the claim and the counterclaim and if the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit).  The most efficient solution is to consolidate the two cases so that Plaintiffs' claims here can be heard with the claims in Lawsuit 2.

## <u>CONCLUSION</u>

For the foregoing reasons, Frontier respectfully requests that the Court deny the Motion in its entirety, consolidate this proceeding with Lawsuit 2, and grant any such other and further relief as the Court deems appropriate.

Dated:  October 23, 2023
       New York, New York

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

 /s/ Eric B. Fisher
Eric B. Fisher
Tessa B. Harvey
675 Third Avenue, 26th Floor
New York, New York 10017
Tel: (212) 510-7008
Fax: (212) 510-7299
Email: efisher@binderschwartz.com
Email: tharvey@binderschwartz.com

**LANE POWELL PC**
David Schoeggl (*pro hac vice application forthcoming*)
601 S.W. Second Avenue
Suite 2100
Portland, Oregon 97204
Telephone: (503) 778-2100
Email: schoeggld@lanepowell.com

*Attorneys for Defendant-Counterclaim Plaintiff Frontier Airlines, Inc.*

17