**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLYLE AVIATION MANAGEMENT LIMITED, ACCIPITER INVESTMENTS AIRCRAFT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, ACCIPITER HOLDINGS DAC, MAVERICK AVIATION HOLDINGS LTD., MANCHESTER AVIATION FINANCE S.à r.l., WELLS FARGO TRUST COMPANY, N.A., not in its individual capacity but solely in its capacity as OWNER TRUSTEE, UMB BANK, N.A., not in its individual capacity but solely in its capacity as OWNER TRUSTEE, <br><br>                  Plaintiffs, <br><br> v. <br><br> FRONTIER AIRLINES, INC. <br><br>                  Defendant. | Case No.: 1:23-cv-04774 (PAE) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM
AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR CONSOLIDATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
    I.    FRONTIER'S COUNTERCLAIM FAILS TO STATE A CLAIM. ................................. 2
        A.    Frontier Fails to Allege Any Obligation Under the Leases or the Participation Agreement to Provide "Reasonable Assurances." ................................................. 2
        B.    Frontier Fails to Allege Breach of Quiet Enjoyment. ....................................... 4
        C.    Frontier Fails to Allege Breach of Contract with Respect to the Reimbursement of Legal Fees and Expenses. ................................................................................. 6
    II.   FRONTIER'S CROSS-MOTION TO CONSOLIDATE SHOULD BE DENIED. ............ 7
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*255 Butler Assoc. LLC v. 255 Butler LLC*,
   2017 WL 11707009 (N.Y. Sup. Ct. Dec. 7, 2017) ....................................................................5

*255 Butler Associates, LLC v. 255 Butler, LLC*,
   102 N.Y.S.3d 259 (2d Dep't 2019) ..........................................................................................5

*255 Butler Associates, LLC v. 255 Butler, LLC*,
   102 N.Y.S.3d 699 (2d Dep't 2019) .......................................................................................4, 5

*A&L Auto Repair, Inc. v. Hudson Petroleum Realty, LLC*,
   2018 WL 10517080 (E.D.N.Y. Mar. 6, 2018) .........................................................................5

*Dance Magic, Inc. v. Pike Realty, Inc.*,
   926 N.Y.S.2d 588 (2d Dep't 2011) ..........................................................................................6

*Dashnaw v. Usen*,
   2006 WL 1742174 (N.D.N.Y. June 21, 2006) .........................................................................8

*Flintkote Co. v. Allis–Chalmers Corp.*,
   73 F.R.D. 463 (S.D.N.Y. 1977) .............................................................................................10

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*,
   2009 WL 3644159 (E.D.N.Y. Oct. 27, 2009) ....................................................................8, 10

*Kelly v. Kelly*,
   911 F. Supp. 66 (N.D.N.Y. 1996) ........................................................................................8, 9

*KGK Jewelry LLC v. ESDNetwork*,
   2014 WL 7333291 (S.D.N.Y. Dec. 24, 2014) ........................................................................10

*MBIA Ins. Corp. v. Royal Bank of Canada*,
   706 F. Supp. 2d 380 (S.D.N.Y. 2009) ......................................................................................7

*TDS Leasing, LLC v. Tradito*,
   51 N.Y.S.3d 96 (2d Dep't 2017) ..............................................................................................4

**Other Authorities**

Fed. R. Civ. Proc. 42(a) ..................................................................................................................7

Plaintiffs-Counterclaim Defendants Carlyle Aviation Management Limited ("CAML"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), Accipiter Holdings DAC ("Accipiter Holdings"), Maverick Aviation Holdings Ltd. ("Maverick"), Manchester Aviation Finance S.à r.l. ("Manchester"), UMB Bank, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("UMB Trustee"), and Wells Fargo Trust Company, N.A., not in its individual capacity but solely in its capacity as Owner Trustee ("WF Trustee") (collectively, "Plaintiffs"), submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Amended Counterclaim filed by Defendant-Counterclaim Plaintiff Frontier Airlines, Inc. ("Frontier") and in opposition to Frontier's Cross-Motion to Consolidate this action with the related action captioned *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd.*, No. 1:22-cv-02943 (PAE) (S.D.N.Y.) ("Litigation 2") (the "Cross-Motion to Consolidate").

## PRELIMINARY STATEMENT

With its breach of contract counterclaim and its cross-motion to consolidate this action with Litigation 2, Frontier continues to try to muddy the waters and confuse the issues before the Court.[1] But as explained in Plaintiffs' Motion to Dismiss Frontier's Amended Counterclaim, ECF No. 31 (the "Motion to Dismiss" or "MTD"), and in this Reply Memorandum of Law in Further Support of the Motion to Dismiss (the "Reply"), Frontier's counterclaim fails for several reasons. Frontier fails to allege any obligation under the Leases or Participation Agreement requiring Plaintiffs to provide "reasonable assurances" that a routine security or lease assignment will not diminish Frontier's hypothetical interest in collecting a litigation judgment in a separate action.

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in Plaintiffs' Motion to Dismiss.

Nor does Frontier allege that Plaintiffs have breached the covenant of quiet enjoyment by evicting or constructively evicting Frontier from possession of the Aircraft. In addition, Frontier fails to allege a breach of contract with respect to the reimbursement of legal fees. Apparently recognizing these failings, Frontier seeks to create further distraction and now seeks to consolidate this action with Litigation 2—a case concerning different facts and an entirely different set of transactions taking place at a different time period and involving different entities. Frontier's transparent effort to distract the Court by muddying the facts and issues between the two litigations, and to bypass its obligation to meet its pleading burdens as to this counterclaim, should be rejected.

## ARGUMENT

### I.      FRONTIER'S COUNTERCLAIM FAILS TO STATE A CLAIM.

Frontier's counterclaim for breach of contract is based on faulty premises, attempts to mislead the Court, and throwaway assertions unsupported by well-pled factual allegations. Accordingly, Frontier's amended counterclaim should be dismissed.

#### A.      Frontier Fails to Allege Any Obligation Under the Leases or the Participation Agreement to Provide "Reasonable Assurances."

Frontier claims that Plaintiffs breached Section 20.2(a) of Lease Form 1 and Section 22.3(v) of Lease Form 2 when Plaintiffs did not provide Frontier "with reasonable and required assurances in connection with [Plaintiffs'] demand that Frontier execute certain assignments and sale transaction documents commencing in November 2022 that such transactions would not restrict or otherwise diminish Frontier's rights and interests under the Leases and its use [of] the Aircraft, or harm Frontier's ability to recover on a judgment in [Litigation 1]." (Am. Answer & Counterclaim (the "Amended Counterclaim") ¶ 92, ECF No. 30.) As explained in Plaintiffs' Motion to Dismiss, none of the provisions to which Frontier cites imposes any obligation on Plaintiffs with respect to the transactions that are actually at issue in this litigation—the attempted

sale of four aircraft that Plaintiffs own, and the refinancing of others (the "Sale/Financing Transactions"). (MTD at 9-10.)

In its opposition brief, Frontier first argues that the Court has already decided this issue in Litigation 2. (Opp'n to Pls' Mot. to Dismiss Frontier's Am. Counterclaim at 9, ECF No. 39 (the "MTD Opp.").) Indeed, Frontier goes as far as to argue that this action "concerns the same provisions *and the same proposed transfers*." (MTD Opp. at 9 (emphasis added).) But that is flat-out wrong, and nothing more than an attempt to confuse the issues.

The issue before the Court in Litigation 2 was whether *an entirely separate transaction*—an upstream transfer of certain entities that owned more than a hundred aircraft (the "Carlyle/CK Transaction")—breached Section 20.2(a) of the Leases. That has no bearing on the issue before the Court in this Litigation, which relates to Plaintiffs' repeated requests for Frontier's cooperation in selling or refinancing certain of those aircraft. Put simply, the Court's decision in Litigation 2 is inapplicable to transactions at issue here—transactions that were scuttled by Frontier's bad faith actions.

Frontier's only attempt to address the transactions that are at issue in this case is its argument that "Plaintiffs insisted that Frontier acquiesce to transaction documents" related to the Sale/Financing Transactions, "that *would* diminish Frontier's rights by *eliminating Frontier's interest in the aircraft needed to secure a judgment in Lawsuit 1*." (MTD Opp. at 10 (second emphasis added).) But a fatal flaw in Frontier's position is that nothing under the Leases or any other document gives Frontier a right to use the Aircraft to secure a judgment in an unrelated litigation—particularly one arising from the wholly separate Framework Agreement, which is an agreement between Frontier and non-party AMCK Aviation Holdings Ireland Limited. In fact, *Frontier has no security interest in the Aircraft at all*. No such right exists in the Leases.

Even if the Court were to ignore all of that—and it should not—Plaintiffs explained in their Motion to Dismiss that the Amended Counterclaim does not allege "any facts showing that the Sale/Financing Transactions—the only transactions relevant in this Litigation 3—would have resulted in a restriction on [Frontier's] rights under the Leases or the related agreements or increased any of Frontier's obligations." (MTD at 10.) Frontier ignores this point, conceding it. Even if Frontier addressed this point, Frontier cannot show that a transfer of the Aircraft ownership from a Plaintiff to a new owner, or a refinancing for any of the Aircraft, would have any impact whatsoever on Frontier's rights under the Leases or its operation of the Aircraft. Tellingly, Frontier has never objected to the identities of the proposed purchasers or financing sources, making clear it has no real objection to those transactions. The truth of the matter is that Frontier would be in exactly the same position before and after the sales and/or refinancings of the Aircraft.

### B. Frontier Fails to Allege Breach of Quiet Enjoyment.

As explained in Plaintiffs' Motion to Dismiss, under New York law, "[i]n actions for damages for breach of the covenant of quiet enjoyment, a tenant . . . must show an ouster, or if the eviction is constructive, an abandonment of the premises." *TDS Leasing, LLC v. Tradito*, 51 N.Y.S.3d 96, 97 (2d Dep't 2017).[2] Frontier has not, and cannot, plead any such facts as it never lost possession of the Aircraft.

In response, Frontier cites *255 Butler Associates, LLC v. 255 Butler, LLC*, 102 N.Y.S.3d 699, 701 (2d Dep't 2019) ("*Butler I*") for the proposition that issuing an allegedly wrongful default notice can be the basis for a claim of breach of the covenant of quiet enjoyment. (MTD Opp. at 14.) But unlike here, the plaintiff in *Butler Associates* alleged that the default notices "brought [plaintiff's] development efforts to an abrupt halt, effectively putting [him] out of business" and

---

[2] Unless otherwise stated, internal citations and quotations are omitted throughout.

- 4 -

rendering him "unable to obtain the economic benefits" of developing the property. *See* Verified First Am. Compl. ¶¶ 1-3, *255 Butler Assoc. LLC v. 255 Butler LLC*, 2017 WL 11707009 (N.Y. Sup. Ct. Dec. 7, 2017) (No. 511560/2015); *see also 255 Butler Associates, LLC v. 255 Butler, LLC*, 102 N.Y.S.3d 259, 261 (2d Dep't 2019) ("*Butler II*")[3] (noting that the plaintiff had alleged that he was "unable to obtain financing to develop the subject property as a result of the allegedly improperly issued notices of default"). Frontier has alleged nothing of the sort here—nor can it—because its use of the Aircraft has not been impeded in any way.

Frontier cites *A&L Auto Repair, Inc. v. Hudson Petroleum Realty, LLC*, 2018 WL 10517080, at *8 (E.D.N.Y. Mar. 6, 2018) for the proposition that "Frontier need only plead that Plaintiffs' actions resulted in a 'diminution in [its] enjoyment' of the [leased property]." (MTD Opp. at 15.) But Frontier mischaracterizes the holding of *A&L Auto Repair* and the pleading standard for breach of quiet enjoyment under New York law. Rather, the court in *A&L Auto Repair* stated the rule cited by Plaintiffs, *i.e.*, that a tenant "must abandon possession in order to claim that there was a constructive eviction," and specifically noted that "[h]ere, where the plaintiffs continue to occupy their stations, no actual or constructive eviction has occurred, even if the plaintiffs experience a diminution in their enjoyment of the premises." *A&L Auto Repair*, 2018 WL 10517080, at *8. It is therefore not the case, as Frontier suggests, that it "need only plead that Plaintiffs' actions resulted in a 'diminution in [its] enjoyment'" of the Aircraft. (MTD Opp. at 15.) Regardless, Frontier's Amended Counterclaim is devoid of facts showing any diminution in Frontier's enjoyment of the relevant Aircraft.

---

[3] The opinion in *Butler I* notes that the "underlying facts of this appeal are summarized" in *Butler II* and another opinion. *Butler I*, 102 N.Y.S.3d at 700.

Finally, any consequences arising from the Plaintiffs' exercise of their bargained-for remedies cannot be the basis for Frontier's breach of quiet enjoyment claim. *See Dance Magic, Inc. v. Pike Realty, Inc.*, 926 N.Y.S.2d 588, 593 (2d Dep't 2011) (holding that plaintiff was precluded from claiming a breach of the covenant of quiet enjoyment when it failed to satisfy a condition precedent in its lease yet remained in possession of the subject premises).

### C. Frontier Fails to Allege Breach of Contract with Respect to the Reimbursement of Legal Fees and Expenses.

First, Frontier concedes that none of the operative agreements provide a date certain by which Plaintiffs must reimburse any legal fees. Rather, it merely alleges that Lease Form 2—which only applies to one Aircraft—states that the fees required to be reimbursed should be paid "promptly." (MTD Opp. at 12.) Frontier has not alleged any facts showing that Plaintiffs have improperly delayed payment of legal fees. Indeed, Plaintiffs in good faith asked Frontier for clarification regarding the outstanding fees sought, and it was *Frontier* who delayed setting up that meeting. (*See* MTD at 12.) Moreover, Lease Form 1 prescribes no timeframe for reimbursement. It merely states that Lessor "shall have reimbursed to Lessee (*or* shall have agreed in writing to promptly reimburse to Lessee *following such assignment, transfer or novation*)" the reasonable fees to be reimbursed. (Ex. 1 (Lease Form 1) § 20.2(a)(v) (emphasis added).)[4] And even if the Court were to imply some reasonable period for the payment of the fees, there are no facts alleged showing that Plaintiffs have gone beyond that period, particularly in light of the fact that Frontier is the party that has delayed resolution of its own claim.

In addition, Frontier takes the unreasonable position that because Plaintiffs have agreed to reimburse certain non-litigation fees, Plaintiffs have thereby conceded that they are obligated to

---

[4] Unless otherwise specified, "Ex. __" refers to exhibits to the Declaration of Jed M. Schwartz, filed contemporaneously herewith.

reimburse *any legal fees* Frontier claims to be owed—including litigation fees incurred "in connection with" the transactions at issue. (MTD Opp. at 2, 12.) This is nonsensical, and not what the relevant agreements contemplate. As detailed in the Motion to Dismiss, Lease Form 1 provides for the reimbursement of reasonable costs and expenses "*incurred in connection with Frontier's cooperation with Lessor*" insofar as they relate to a transaction contemplated by Section 20.2(a). (Ex. 1 (Lease Form 1) § 20.2(a)(v) (emphasis added); MTD at 13.) Likewise, Lease Form 2 and the Participation Agreement (which only apply to one Aircraft), allow for the reimbursement of reasonable legal fees incurred in connection with a security assignment contemplated by Section 22.2—with which Frontier is expressly bound to cooperate. (Ex. 2 (Lease Form 2) § 22.2(2); Ex. 3 (Participation Agreement) § 3.1(a)(2); MTD at 13-14.) Frontier suggests that the fees it seeks were incurred in connection with its "cooperation" because it purportedly "negotiated with Plaintiffs in good faith for months." (MTD Opp. at 13.) But this is totally inapplicable to litigation fees Frontier incurred as a result of its own breaches and manufactured delays.[5]

## II.   FRONTIER'S CROSS-MOTION TO CONSOLIDATE SHOULD BE DENIED.

Frontier's Cross-Motion to Consolidate pursuant to Rule 42(a) of the Federal Rules of Civil Procedure should be denied because Frontier cannot meet its burden in proving that any judicial

---

[5] Frontier's counterclaim should also be dismissed as to Plaintiffs that are not parties to the relevant agreements. Frontier does not even attempt to dispute that under New York law, one must be a party to a contract in order to breach it. *See MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) ("[A] party who is not a signatory to a contract cannot be held liable for breaches of that contract."). Therefore, to the extent that Frontier's counterclaim arises from any purported breach of the Leases, such claim must be dismissed as to Plaintiffs CAML, Accipiter, Vermillion, Accipiter Holdings, Maverick, and Manchester, who are not party to the Leases. To the extent that Frontier's counterclaim arises from any purported breach of the Participation Agreement such claim must be dismissed as to Plaintiffs CAML, Vermillion, Accipiter Holdings, Maverick, Manchester, and UMB Trustee, who are not party to the Participation Agreement. And to the extent that Frontier's counterclaim arises from any purported breach of the Guarantees, such claim must be dismissed as to CAML, Maverick, Manchester, UMB Trustee, and WF Trustee, none of whom are Guarantors.

economy achieved would outweigh the significant likelihood of confusion of the issues and prejudice to Plaintiffs. *See Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, 2009 WL 3644159, at *3-4 (E.D.N.Y. Oct. 27, 2009) ("Even when actions involve a common question of law or fact, the trial court has broad discretion to determine whether consolidation is appropriate by balancing the economy gained, an interest in avoiding conflicting results and prejudice to the parties."); *Dashnaw v. Usen*, 2006 WL 1742174, at *2 (N.D.N.Y. June 21, 2006) ("[T]he burden rests with the party moving for consolidation to not only show the commonality of facts and law, . . . but to convince the court that there would not be any unnecessary delays or confusion."). "[C]ourts must examine the specific underlying facts with close attention before ordering consolidation." *Dashnaw*, 2006 WL 1742174, at *24. And "consolidation is by no means a necessity." *Kelly v. Kelly*, 911 F. Supp. 66, 69 (N.D.N.Y. 1996).

Frontier's request is simply a continuation of its attempts to confuse the issues between this action and Litigation 2. But the actions are substantially different, and Plaintiffs would be prejudiced by consolidation.

***First***, the two cases do not concern the same events or transactions. Litigation 2 involves one remaining claim that the remaining defendants allegedly breached the Leases by not giving proper notice of the Carlyle/CK Transaction to Frontier. This action does not concern the events surrounding the Carlyle/CK Transaction at all. Here, Plaintiffs' claims involve events that transpired ***well after*** the Carlyle/CK Transaction closed: Frontier's failure to satisfy its obligations in effectuating consents for sales and transfers under the Leases and the Cooperation Agreement,

which was entered into by the parties, at Frontier's request, **well after** Litigation 2 commenced and in light of Litigation 2.[6]

***Second***, Frontier is the plaintiff in Litigation 2 and is the defendant in this action. Certain Plaintiffs in this action are not parties to Litigation 2 as they were dismissed pursuant to the Court's order on the defendants' motion to dismiss in Litigation 2.[7] (Litig. 2, ECF No. 59.) Consolidating the cases would prejudice certain Plaintiffs in this action by subjecting them to a litigation in which the claims against them have been dismissed. *See Kelly*, 911 F. Supp. at 69 ("The parties are not identical, and prejudice could result for the additional parties on both sides depending on the outcome."). That prejudice would be compounded by the fact that Litigation 2 will be tried to the Court, while Plaintiffs in this action demanded a jury trial.[8]

***Third***, these cases do not involve the same provisions of the same agreements, as Frontier claims. (MTD Opp. at 16.) Although the cases involve similar provisions with respect to permitted transfers under the Leases, this action also concerns the cooperation provisions of the Leases and an entirely separate agreement that is not at issue in Litigation 2. This action at its center concerns

---

[6] Frontier also argues that discovery for the two actions will be "overlapping" but this is simply not true. (*See* MTD Opp. at 16.) Although there may be some overlap, the events and time periods surrounding the claims in the two actions are separate and distinct. The discovery in Litigation 2 will involve events occurring prior and up to the closing of the Carlyle/CK Transaction from around December 2021 through April 2022, whereas the discovery in this action will involve events occurring *after* the Carlyle/CK Transaction closed and more closely to the events surrounding the Cooperation Agreement, which was executed six months later in October 2022.

[7] The only remaining defendants in Litigation 2 are Accipiter, Accipiter Holdings, Vermillion, Wells Fargo Trust Company, N.A., solely in its capacity as Owner Trustee, and UMB Bank, N.A., solely in its capacity as Owner Trustee. The claims against the following entities have been dismissed and, thus, they are no longer defendants in Litigation 2: AMCK Aviation Holdings Ireland Limited, CAML, Maverick, Manchester, and Vermillion Aviation Holdings Limited.

[8] While the leases contain a specific waiver of jury trial, the Cooperation Agreement—one of the agreements underlying Plaintiffs' breach of contract claims in this action—did not include such a waiver, thus permitting Plaintiffs' demand for jury trial in this action.

Frontier's breach of the Leases and the Cooperation Agreement, which, as previously stated, was executed after Frontier commenced Litigation 2. Consolidation would not promote judicial economy, and instead would cause confusion of the cases' distinct issues and would significantly prejudice Plaintiffs. *See KGK Jewelry LLC v. ESDNetwork*, 2014 WL 7333291, at *3 (S.D.N.Y. Dec. 24, 2014) ("[C]ourts generally deny consolidation requests when consolidation of disparate claims would muddle the issues before the court …"); *Gristede's Foods, Inc.*, 2009 WL 3644159, at *4 (denying consolidation and holding that "the legal and factual distinctions between the two actions are significant and the superficial similarities between them can easily lead to confusion of the issues.").

***Finally***, although the related litigations are currently subject to the same discovery track pursuant to similar case management orders, this is not sufficient to require consolidation. *Flintkote Co. v. Allis–Chalmers Corp.*, 73 F.R.D. 463, 464-65 (S.D.N.Y. 1977) ("[C]onsolidation should not be ordered if it would prejudice [the non-moving party], for considerations of convenience and economy must yield to the interests of justice in a fair and impartial trial."). This action and Litigation 2 have more differences than similarities: they concern different parties, different events occurring during different periods, and different factual issues, involving different agreements and transactions. Therefore, Frontier's Cross-Motion to Consolidate should be dismissed.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion to dismiss should be granted, and Frontier's Amended Counterclaim and Cross-Motion to Consolidate should be dismissed.

|  |  |
|---|---|
| Dated: November 3, 2023<br>New York, New York | **MILBANK LLP**<br><br>*/s/ Jed M. Schwartz*<br><br>Jed M. Schwartz<br>Samantha A. Lovin<br>Emily Werkmann<br>55 Hudson Yards<br>New York, New York 10001<br>Tel: (212) 530-5000<br>JSchwartz@milbank.com<br>SLovin@milbank.com<br>EWerkmann@milbank.com<br><br>*Counsel for Plaintiffs-Counterclaim Defendants* |