

Eric B. Fisher
Binder & Schwartz LLP           (T) 212.933.4551
675 Third Avenue, 26th Floor    (F) 212.510.7299
New York, NY 10017              efisher@binderschwartz.com

November 15, 2023

**By ECF**

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, New York 10007

      Re: *Carlyle Aviation Management Limited, et al. v. Frontier Airlines, Inc.*,
          No. 1:23-cv-04774 (PAE) – Response to Request for Discovery Conference

Dear Judge Engelmayer:

      We write respectfully on behalf of Frontier Airlines, Inc. ("Frontier"), defendant in the above action, to respond to the November 10, 2023 letter [Dkt. No. 49] from plaintiffs in this case ("Carlyle"), which requested an informal discovery conference concerning Frontier's responses and objections to Carlyle's first set of document requests in this lawsuit referred to by the parties as Lawsuit 3.

      As an initial matter, Carlyle's letter to the Court is premature because Carlyle sent it before completing the parties' meet-and-confer process required by Fed. R. Civ. P. 37(a)(1) and Rule 2.C. of this Court's Individual Rules and Practices in Civil Cases. At a minimum, it appears likely that the issues raised in Carlyle's letter can be substantially narrowed by these continuing discussions. Specifically, the parties met and conferred about the issues raised in the letter on October 30, 2023, and Frontier advised Carlyle that it would conduct additional research, confer with our client, and reconsider some of Frontier's positions in light of the discussion. We subsequently learned that Frontier's general counsel was out of the office and unavailable until at least November 6. Carlyle sent the Court the November 10 letter while Frontier was in the process of responding to Carlyle, and, notwithstanding Carlyle's letter to the Court, Frontier sent its response on Sunday, November 12.

      Without burdening the Court with all the particulars, we respond briefly below to the points raised in Carlyle's November 10 letter to the Court:

      1. <u>Electronically Stored Information</u>

      Carlyle's Lawsuit 3 is unusual insofar as it chiefly involves the reasonableness of positions advanced by outside counsel for Carlyle and Frontier during the pendency of two ongoing lawsuits. Thus, a typical approach to collecting and searching large volumes of ESI in either side's possession is not warranted here. As described in our November 12 email to Carlyle's counsel, there is ample case law to support our position that Frontier and Carlyle



should both be relieved of burdensome ESI collection and searches where all, or nearly all, of their internal documents on the relevant issues are likely to be privileged or protected by work product immunity.  *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2023 WL 2871090, at *6-8 (S.D.N.Y. Apr. 10, 2023) (where document requests raise significant privilege issues, burden of the review can outweigh the benefit of the discovery); *see also N. Cnty. Comm'ns Corp. v. Verizon Global Networks, Inc.*, No. 08-cv-01518, 2012 WL 12870300, at *3 (S.D. Cal. Oct. 31, 2012) (denying request that defendant search for and produce communications where "the vast majority of those communications are subject to attorney-client and work-product protection"); *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. CV-17-1734-RGA, 2019 WL 3369659, at *1 (D. Del. July 15, 2019) (denying request to search in-house counsel's documents where burden outweighed the benefit of any relevant and discoverable documents).  Frontier estimates that there is upwards of 380GB of data that could potentially be subject to searching, and that the time commitment and burden of searching that volume of data would be substantial, both in terms of the time-demands on Frontier's internal personnel and the costs incurred by outside counsel and e-discovery vendors.

2. Documents and Communications Concerning the Sale/Financing Transactions

The issues raised by Carlyle with regard to the production of documents and communications concerning the sale/financing transactions at issue in this case are a subset of the ESI issue described above.  The contract negotiations and disputes at issue were all negotiated between lawyers while litigation was pending.  As we informed Carlyle in our November 12 email, Frontier's counsel has confirmed that Frontier's business personnel do not recall having any direct negotiations other than non-discoverable settlement communications under Fed. R. Evid. 408, and do not recall any intra-Frontier communications about this topic that were not with counsel or concerning counsel's advice.  Accordingly, the parties should focus on a cost-effective approach to gathering a definitive set of all the relevant communications between counsel for the parties, and neither side should have to incur the burden and cost of collecting and reviewing ESI that is overwhelmingly or completely protected by attorney client privilege and work product immunity.

3. Documents Concerning Damages in Lawsuit 1

Carlyle's broad requests for documents concerning damages in "Lawsuit 1" (*i.e.*, the separate lawsuit scheduled for trial before Judge Stanton in March 2024) should be rejected.  The plaintiffs in this lawsuit have no need for detailed information about the damages in Lawsuit 1. All that Frontier needs to show is that it has a bona fide claim to substantial damages in Lawsuit 1 that it reasonably and in good faith sought to protect in connection with the proposed aircraft transfers and refinancings—as the Court considered in connection with its preliminary injunction order in Lawsuit 2.  Frontier is concerned that this request may be an improper effort to obtain additional discovery in Lawsuit 1 long past the discovery cutoff in that action.  Nonetheless, and in an effort to reach a compromise on this issue, Frontier has offered to produce the report of its damages expert from Lawsuit 1, which is sufficient to substantiate its claim for damages in



Lawsuit 1, and Frontier remains willing to continue the meet-and-confer process in an effort to further narrow or eliminate this issue.

    4.   Documents and Communications Concerning the Leases

Carlyle also broadly seek "all Documents and Communications concerning the Leases, including the negotiation thereof." During the October 30 meet-and-confer session, Carlyle's counsel offered to limit this request to documents concerning the drafting of Section 20.2 and the meaning of "reasonable cooperation" in that section. While Frontier does not believe the relevant lease terms are ambiguous, it nonetheless offered to search for and produce communications between the lawyers who negotiated Section 20.2 in the original leases (Paul Lambert of Lane Powell and Patrick O'Reilly of Clifford Chance) regarding that section.

    5.   Discovery from Carlyle

Carlyle's claim in this lawsuit is that it suffered millions of dollars in lost aircraft sales due to Frontier's allegedly "unreasonable" conduct in refusing to execute agreements signing Frontier's rights away with regard to collecting a judgment in Lawsuit 1. Carlyle has not yet articulated how it can prove such damages, given that the subject aircraft have not lost value and Carlyle retains the ability to sell them, among other reasons. It will come as no surprise to the Court to learn that Frontier has raised issues with respect to plaintiffs' discovery positions as well, including but not limited to the fact that plaintiffs should be required to produce all documents concerning the alleged loss of specific opportunities to sell certain of the aircraft. Frontier plans to further discuss these issues with plaintiffs' counsel with the goal of resolving or minimizing the areas of disagreement.

For these reasons, we respectfully suggest that the Court either deny the requests in Carlyle's November 10 letter outright, or deny them without prejudice and order the parties to continue to meet and confer as to the outstanding discovery requests in an effort to narrow or eliminate the dispute.

We thank the Court for its attention to this matter.

                                                         Very truly yours,

                                                         Eric B. Fisher

cc:    All Counsel of Record (via ECF)