

Eric B. Fisher
Binder & Schwartz LLP          (T) 212.933.4551
675 Third Avenue, 26th Floor    (F) 212.510.7299
New York, NY 10017              efisher@binderschwartz.com

December 11, 2023

**By ECF**

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, New York 10007

> Re: *Carlyle Aviation Management Limited, et al. v. Frontier Airlines, Inc.*,
> No. 1:23-cv-04774 (PAE) – Response to Request for Discovery Conference

Dear Judge Engelmayer:

    This firm represents defendant Frontier Airlines, Inc. ("Frontier") in the above case ("Lawsuit 3"). We write in response to plaintiffs' ("Carlyle Parties") December 6, 2023 letter to the Court [Dkt. No. 63] ("Pls.' Dec. 6 Ltr."), seeking to file a discovery motion on the one issue from their November 10, 2023 letter [Dkt. No. 49] that remains in dispute.

    As the Court is aware, Lawsuit 3 involves a dispute about whether positions taken by Frontier over the course of negotiating aircraft financing and transfer documents were reasonable and within Frontier's rights. Document discovery in Lawsuit 3 is unusual because the positions at issue were all communicated between the parties' respective outside counsel during the pendency of litigation (Lawsuit 2). Thus, the relevant documents are letters and emails between lawyers at Milbank and Lane Powell setting forth the parties' positions. In recognition of this fact, the Carlyle Parties have to date produced these documents but no others, and have agreed that Frontier need not produce a duplicative set of these communications between outside counsel. Accordingly, the Carlyle Parties' statement that Frontier has not produced any documents to date is technically correct but misleading. Both parties are in the process of collecting and reviewing for production agreed categories of documents. In addition to what has already been agreed between the parties, the Carlyle Parties now ask the Court to order Frontier to collect all electronic records from four custodians, including Frontier's general counsel, and to run broad searches on records. The proposed search terms are annexed hereto as Exhibit A.

    The Carlyle Parties' request for broad e-discovery should be denied because it will be expensive and burdensome to an extent that is out of proportion to the needs of the case. *Lyons v. N.Y. Life Ins. Co.*, No. 20 CIV. 3120 (PAE), 2021 WL 2981586, at *1 (S.D.N.Y. July 15, 2021) (noting that discovery should be "proportional to the needs of the case," considering "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(1). Frontier's IT Director has advised that there are 381.6 GB of data from just the four custodians requested by the Carlyle Parties and that it would require approximately two weeks of work by a Frontier IT specialist or outside vendor to collect and prepare these documents. It would then be necessary to conduct an in-depth privilege review to



determine if there are any documents that are not privileged.  Frontier would then need to prepare a privilege log.  By way of illustration, a "hit" rate of only 1% across the 381.6 GB of data from the four custodians means Frontier could need to review between 248,040 and 381,600 documents for privilege.[1]  Estimates presented at an October 23, 2023 hearing of the Advisory Committee on Civil Rules regarding proposed amendments to Rule 26, indicate that a privilege review of 250,000 documents can cost up to $5 million.[2]  While we do not expect Frontier's review to cost quite as much as that, the sheer number of "hits" that are privileged or otherwise non-discoverable will make the cost substantial.

The requested e-discovery is not proportionate to the needs of this case for two reasons.  First, it is unlikely to yield nonprivileged discoverable documents.  The Carlyle Parties' December 6 letter concedes that it would be inappropriate to collect communications with outside counsel – even though their proposed search terms would require collecting exactly those communications.[3]  Frontier's counsel interviewed the employees known to be involved, and they each confirmed that they did not recall any discoverable communications not made for the purpose of obtaining legal advice or developing legal strategy in concert with outside counsel.[4]  Courts have consistently denied requests to order broad e-discovery under these circumstances.  *See, e.g., N. Cnty. Commc'ns Corp. v. Verizon Glob. Networks, Inc.*, No. 08-cv-01518, 2012 WL 12870300, at *3 (S.D. Cal. Oct. 31, 2012); *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 17-1734, 2019 WL 3369659, at *1 (D. Del. July 15, 2019); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2023 WL 2871090, at *7 (S.D.N.Y. Apr. 10, 2023).  The Carlyle Parties' efforts to distinguish this case law are not persuasive.  As the Carlyle Parties acknowledge in their letter, the Court in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, held that two of plaintiffs' document requests "raise[d] specific issues of privilege, which make their proposed review unduly burdensome and disproportionate to the needs of the case." 2023 WL 2871090, at *7.  The same is true here: the Carlyle Parties' e-discovery searches seek communications that are overwhelmingly, and may be entirely, privileged, and the burden of searching, reviewing, and logging those communications is disproportionate to the needs of this case.  The Carlyle Parties also misconstrue the holding in *North County Communications Corp.*, 2012 WL 12870300, at *3, claiming that the communications sought in that case were "*solely* between in-house counsel, and therefore, *certain* to be privileged."  Pls.' Dec. 6 Ltr. at 3 (emphasis added).  However, there, as here, the "*majority*" of the communications sought by the plaintiffs were between and among in-house counsel—and the "vast majority of *those* communications" would be subject to attorney-client privilege and work-product protection.  *N. Cnty. Commc'ns Corp.*, 2012 WL 12870300, at *3

---

[1] *How Many Pgs. in a GB*, https://www.digitalwarroom.com/blog/how-many-pages-in-a-gigabyte (visited 12/10/23).

[2] *See Hr'g on Proposed Ams. to Civ. R. 16, 26, and Proposed New R. 16.1*, Advisory Comm. Civil Rules (Oct. 16, 2023), https://www.uscourts.gov/sites/default/files/testimony_packet_for_october_16_2023_final_10-11.pdf.

[3] The terms are also overbroad because the timeframe is unlimited.

[4] The employees did recall a few communications directly with Carlyle representatives, but they all concerned confidential Rule 408 settlement discussions, and Plaintiffs are well aware of these communications.



(emphasis added); *see also Sprint Commc'ns Co.*, 2019 WL 3369659, at *1 (in-house counsel "may have relevant and discoverable documents," but "the Special Master properly weighed the potential benefits" against burden of "gathering the ESI, filtering . . . for what is privileged," and "cataloging").  As in those cases, here, the vast majority, if not all, "hits" will be privileged.

       Second, while it may sometimes be justified to impose exorbitant discovery costs to look for a needle in a haystack of privileged documents, there is no justification here.  Although the Carlyle Parties have not yet quantified or provided support for their damages claim, recoverable damages (if any) are likely to be modest.  The Carlyle Parties claim that they lost the opportunity to sell and refinance aircraft because Frontier proposed contract terms that allegedly were unreasonable.  According to the Carlyle Parties, the sales were "lost" when the buyers' offers expired on July 31, 2023.  Pls' Supp. Compl. ¶ 100-02, Dkt. No. 47-1.  However, once the Carlyle Parties provided an acceptable guarantee on August 21, 2023, Frontier immediately removed the conditions in the transaction documents that the Carlyle Parties found objectionable.  Thus, the only damages for these allegedly lost sales – even assuming liability is established – is any reduction in value of the aircraft in the three weeks between July 31, 2023 and August 21, 2023.  And even those damages should be capped due to the Carlyle Parties' failure to mitigate damages.  At any time, the Carlyle Parties could have resolved this entire dispute by posting a bond or letter of credit to protect any judgment in Lawsuit 3.  An acceptable bond could have been purchased for $300,000 or less, but the Carlyle Parties chose not to do so.  Thus, the doctrine of mitigation of damages should limit the Carlyle Parties' damages to the cost of such a bond or letter of credit.  Given the prospect of limited damages even if the Carlyle Parties were to prevail, potentially exorbitant discovery costs are not proportional to this case. *See Shirlaw v. N.Y. State Unified Ct. Sys. Off. of Ct. Admin.,* 2018 WL 3007927, at *1 (S.D.N.Y. Mar. 16, 2018) (production of marginally relevant documents not proportional to the needs of the case).  For these reasons, the Court should reject the Carlyle Parties' request to file a motion to compel.

       If the Court were to consider ordering broad e-discovery, Frontier respectfully requests that the parties first be directed to meet and confer about narrowed search terms and streamlined procedures for handling privileged communications, given that any such searches will yield a collection that is overwhelmingly privileged.  Further, any ruling on e-discovery and privilege logs should apply equally to both parties given that the Carlyle Parties also possess internal files that are likely to be overwhelmingly privileged and as to which the Carlyle Parties have asserted substantially the same objections as Frontier.  If Frontier is ordered to produce broad e-discovery and voluminous privilege logs, then the Carlyle Parties should be ordered to do the same.

       We thank the Court for its attention to this matter.

                        Respectfully submitted,

                        /s/ Eric B. Fisher
                        Eric B. Fisher

cc:     All Counsel of Record (via ECF)